IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                     )
BRENDA J. OTTE, *et al*,                              )
                                                     )
                          Plaintiffs,                )
                                                     )
              v.                                     )
                                                     )     CASE NO.   09-11537-RGS
LIFE INSURANCE COMPANY OF                             )
NORTH AMERICA, *et al*.,                              )
                                                     )
                          Defendants.                )
_____)

_____

**DEFENDANTS' OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**
_____


Jeffrey W. Moss (MA BBO# 552421)
MORGAN, LEWIS & BOCKIUS LLP
225 Franklin Street, 16th Floor
Boston, MA 02110
Telephone:  617.341.7700
Facsimile:  617.341.7701
Email: jmoss@morganlewis.com

Jeremy P. Blumenfeld (*Pro Hac Vice*)
Victoria L. Gorokhovich (*Pro Hac Vice*)
Kasturi Sen (*Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:  215.963.5000
Facsimile:  215.963.5001
Emails:  jblumenfeld@morganlewis.com
             vgorokhovich@morganlewis.com
             ksen@morganlewis.com

Attorneys for Defendants

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   BACKGROUND .................................................................................. 4

    A.    Gladys Reynolds' CIGNAssurance Account And Plaintiff Brenda Otte ............. 4

    B.    The CIGNAssurance Account Program ......................................................... 5

    C.    Plaintiff's Claims .................................................................................. 8

    D.    Claims Not Asserted By Plaintiff ............................................................. 9

III.  ARGUMENT ...................................................................................... 10

    A.    Plaintiff Has Not Established Typicality .................................................... 12

        1.    Plaintiff Has Not Established Typicality For Putative Class
            Members' Claims Who Received Life Insurance Benefits From
            Defendants Pursuant To Different ERISA-Governed Employee
            Benefit Plans ...................................................................... 13

        2.    Plaintiff Has Not Established Typicality Or Adequacy For Putative
            Class Members' Claims That Arose Prior To September 15, 2006
            Because Of The Applicability Of ERISA's Three-Year Statute Of
            Limitations To Such Claims ..................................................... 19

            a.    The applicability of ERISA's three-year statute of
                limitations would be a focus of any litigation that included
                class claims arising prior to September 15, 2006 ...................... 19

            b.    Because Plaintiff's claims arose after September 15, 2006,
                her claims are not typical of claims that are potentially
                subject to the three-year statute of limitations ......................... 22

        3.    Plaintiff Has Not Established Typicality For Putative Class
            Members Who Signed Claim Forms Explicitly Acknowledging
            And/Or Selecting Payment By CIGNAssurance Account. ................... 23

        4.    Plaintiff Has Not Established Typicality For Putative Class
            Members Residing In States That Have Specifically Approved The
            RAA Payment Method. ............................................................ 25

    B.    Plaintiff Has Not Established That She Is An Adequate Class
        Representative ...................................................................................... 25

        1.    Plaintiff Has Not Established That She Has Any Familiarity With:
            (A) The Claims She Is Asserting, (B) The Facts On Which Her
            Claims Are Based, And (C) The Role Of A Class Representative .......... 26

        2.    Plaintiff Has Failed To Present Evidence Overcoming The
            Obvious Conflicts Presented By Her Status As Administratrix Of
            The Estate Of Ms. Reynolds ..................................................... 29

# TABLE OF CONTENTS
## (continued)

Page

C. Plaintiff Has Not Established That Class Certification Under Any Provision Of Rule 23(b) Is Appropriate ................................................................ 30

    1. Rule 23(b)(1) Is Inapplicable Because There Is No Risk Of Prejudice Due To Inconsistent Adjudication ........................................... 30

        a. Separate adjudications would not prejudice absent class members within the meaning of Rule 23(b)(1)(B) ..................... 30

        b. Separate adjudications would not prejudice the Defendants within the meaning of Rule 23(b)(1)(A) ..................................... 33

    2. Rule 23(b)(2) Is Inapplicable Because Plaintiff Is Not Seeking Predominantly Injunctive Relief ............................................................. 34

        a. Plaintiff is seeking solely monetary relief .................................. 35

        b. Plaintiff's characterization of monetary relief as "equitable" does not transform it into injunctive relief supporting Rule 23(b)(2) certification .................................................................. 37

    3. Rule 23(b)(3) Is Inapplicable Because Plaintiff Has Failed To Establish Predominance And Superiority ................................................. 39

        a. Plaintiff has not established that common issues would predominate if her proposed class is certified ............................. 40

        b. Plaintiff has not established that her proposed class is superior to all other methods of adjudication .............................. 43

IV. CONCLUSION ........................................................................................................... 45

# TABLE OF AUTHORITIES

**Page**

## CASES

Allen v. Adage, Inc.,
  967 F.2d 695 (1st Cir. 1992) ....................................................................................18

Allison v. Citgo Petroleum Corp.,
  151 F.3d 402 (5th Cir. 1998) ........................................................................35, 38, 44

Amchem Prods., Inc. v. Windsor,
  521 U.S. 591 (1997)........................................................................................30, 40, 41

Bacon v. Honda of Am. Mfg., Inc.,
  205 F.R.D. 466 (S.D. Ohio 2001), aff'd, 370 F.3d 565 (6th Cir. 2004) .................................34

Balestracci v. NSTAR Elec. & Gas Corp.,
  449 F.3d 224 (1st Cir. 2006)....................................................................................18

Becher v. Long Island Lighting Co.,
  164 F.R.D. 144 (E.D.N.Y. 1996) ..........................................................................31, 34

Berger v. Compaq Computer Corp.,
  257 F.3d 475 (5th Cir. 2001) ...................................................................................26

Bishop v. Lucent Techs., Inc.,
  520 F.3d 516 (6th Cir. 2008) ...................................................................................20

Bolin v. Sears, Roebuck & Co.,
  231 F.3d 970 (5th Cir. 2000) ...................................................................................37

Browning v. Tiger's Eye Benefits Consulting,
  313 F. App'x 656 (4th Cir. 2009) ..............................................................................21

Carrier v. Am. Bankers Life Assur. Co. of Fla.,
  No. 05-CV-430-JD, 2008 WL 312657 (D.N.H. Feb. 1, 2008) .........................................26, 28

Castano v. Am. Tobacco Co.,
  84 F.3d 734 (5th Cir. 1996) .....................................................................................44

Chorosevic v. MetLife Choices,
  No. 4:05cv2394 CAS, 2007 WL 2159475 (E.D. Mo. July 26, 2007)
  aff'd by Chorosevic v. MetLife Choices, 600 F.3d 934 (8th Cir. 2010) ................................18

In re Citigroup Pension Plan ERISA Litig.,
  241 F.R.D. 172 (S.D.N.Y. 2006) ..............................................................................32

## TABLE OF AUTHORITIES
### (continued)

**Page**

Clarke ex rel. Pickard v. Ford Motor Co.,
    228 F.R.D. 631 (E.D. Wis. 2005) ........................................................................14

Conkright v. Frommert,
    130 S. Ct. 1640 (2010)........................................................................................18

Crosby v. City of Gastonia,
    3:06CV462, 2008 WL 1944399 (W.D.N.C. May 1, 2008) ..................................32

DeRosa v. Mass. Bay Commuter Rail Co.,
    694 F. Supp. 2d 87 (D. Mass. 2010) .............................................................. passim

Dobson v. Hartford Life & Accident Ins. Co.,
    No. 99cv2256, 2006 WL 861021 (D. Conn. Mar. 31, 2006)
    aff'd by Dobson v. Hartford Fin. Servs. Group, Inc.,
    342 F. App'x 706 (2d Cir. 2009)....................................................................32, 33

Drayton v. W. Auto Supply Co.,
    No. 01-10415, 2002 WL 32508918 (11th Cir. Mar. 11, 2002).............................36

Edes v. Verizon Commc'ns, Inc.,
    417 F.3d 133 (1st Cir. 2005).......................................................................20, 21, 42

E. Tex. Motor Freight Sys. Inc. v. Rodriguez,
    431 U.S. 395 (1977).............................................................................................12

Everidge v. Irotas Mfg. Co. LLC 401(k) Profit Sharing Plan,
    No. 3:09-45-DCR, 2010 WL 2889655 (E.D. Ky. July 21, 2010)..........................9

Faber v. Met. Life Ins.,
    2009 WL 3415369 (S.D.N.Y. Oct. 23, 2009)......................................14, 15, 18, 32

First Interstate Bank v. Chapman & Cutler,
    837 F.2d 775 (7th Cir. 1988) ..............................................................................29

Fish v. Greatbank Trust Co.,
    No. 09-cv-1668 (D. Ill.)......................................................................................42

In re FleetBoston Fin. Corp. Sec. Litig.,
    253 F.R.D. 315 (D.N.J. 2008).............................................................................29

Gen. Tel. Co. of Sw. v. Falcon,
    457 U.S. 147 (1982).....................................................................................11, 12, 13

# TABLE OF AUTHORITIES
## (continued)

Page

Gesell v. Commonwealth Edison Co.,
   216 F.R.D. 616 (C.D. Ill. 2003) ...........................................................................................35

In re Global Crossing Sec. & ERISA Litig.,
   225 F.R.D. 436 (S.D.N.Y. 2004) .........................................................................................31

Great-West Life & Annuity Ins. Co. v. Knudson,
   534 U.S. 204 (2002) ............................................................................................................38

Haddock v. Nationwide Fin. Servs., Inc.,
   262 F.R.D. 97 (D. Conn. 2009) ..........................................................................................39

Heffner v. Blue Cross & Blue Shield of Ala., Inc.,
   443 F.3d 1330 (11th Cir. 2006) ..........................................................................................34

Hochstadt v. Boston Scientific Corp.,
   No. 08-12139-DPW, 2010 WL 1704003 (D. Mass. Apr. 27, 2010) ...........................31, 32, 33

Huegel v. City of Easton,
   CIV.A. 00-CV-5077, 2002 WL 32348320 (E.D. Pa. Oct. 23, 2002) .....................................33

Jimenez v. Domino's Pizza, Inc.,
   238 F.R.D. 241 (C.D. Cal. 2006) ........................................................................................37

Kanawi v. Bechtel Corp.,
   254 F.R.D. 102 (N.D. Cal. 2008) ........................................................................................31

Kaplan v. Pomerantz,
   131 F.R.D. 118 (N.D. Ill. 1990) .........................................................................................29

Kennedy v. Plan Adm'r for Dupont Sav. & Inv. Plan,
   129 S. Ct. 865 (2009) .........................................................................................................13

Kent v. SunAmerica Life Ins. Co.,
   190 F.R.D. 271, 281 (D. Mass. 2000) .................................................................................33

Kessen v. Plumbers' Pension Fund, Local 130,
   877 F. Supp. 1198 (N.D. Ill., 1995) .....................................................................................3

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,
   507 U.S. 163 (1993) ............................................................................................................38

Lemon v. Int'l Union Operating Eng'rs Local,
   216 F.3d 577 (7th Cir. 2000) ..............................................................................................35

# TABLE OF AUTHORITIES
### (continued)

**Page**

In re LifeUSA Holding Inc.,
    242 F.3d 136, 144 (3d Cir. 2001)..............................................................................40

Maldonado v. Ochsner Clinic Found.,
    493 F.3d 521 (5th Cir. 2007) ...................................................................................40

Markarian v. Conn. Mut. Life Ins. Co.,
    202 F.R.D. 60 (D. Mass. 2001).................................................................................35

Martin v. Consultants & Adm'rs, Inc.,
    966 F.2d 1078 (7th Cir. 1992) ..................................................................................21

McAdams v. Mass. Mut. Life Ins. Co.,
    No. Civ. A. 99-30284-FHF, 2002 WL 1067449 (D. Mass. May 15, 2002) ............12

McBirney v. Autrey,
    106 F.R.D. 240 (N.D. Tex. 1985) .............................................................................33

Merck & Co. v. Reynolds,
    130 S. Ct. 1784 (2010)..............................................................................................42

Mogel v. UNUM Life Ins. Co. of Am.,
    547 F.3d 23 (1st Cir. 2008).............................................................8, 9, 14, 15, 17, 18

Mogel v. UNUM Life Ins. Co. of Am.,
    646 F. Supp. 2d 177 (D. Mass. 2009) ...........................................................36, 37, 38

In re Monumental Life,
    365 F.3d 408 (5th Cir. 2004) ..............................................................................38, 42

Moore v. Am. Fed'n of Television & Radio Artists,
    216 F.3d 1236 (11th Cir. 2000) ................................................................................14

Nahigian v. Leonard,
    233 F. Supp. 2d 151 (D. Mass. 2002) .........................................................................9

In re New Motor Vehicles Canadian Exp. Antitrust Litig.,
    522 F.3d 6 (1st Cir. 2008)...............................................................9, 11, 12, 40, 41

Ogden v. AmeriCredit Corp.,
    225 F.R.D. 529 (N.D. Tex. 2005) .............................................................................26

# TABLE OF AUTHORITIES
## (continued)

Page

Ortega-Candelaria v. Johnson & Johnson,
　　No. Civ. 08-2382, 2009 WL 1812423 (D.P.R. June 25, 2009)................................................20

Ortiz v. Fibreboard Corp.,
　　527 U.S. 815 (1999)........................................................................................................25, 30

Owner-Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.,
　　213 F.R.D. 537 (W.D. Mo. 2002) aff'd, 339 F.3d 1001, 1011-12 (8th Cir. 2003)................39

Perez v. First Am. Title Ins. Co.,
　　No. CV-08-1184-PHX-DGC, 2010 WL 1507012 (D. Ariz. Apr. 14, 2010) ..........................43

Pettrey v. Enter. Title Agency, Inc.,
　　241 F.R.D. 268 (N.D. Ohio 2006) ........................................................................................34

Pop's Pancakes, Inc. v. NuCO2, Inc.,
　　251 F.R.D. 677 (S.D. Fla. 2008)............................................................................................43

Rabin v. MONY Life Ins. Co.,
　　No. 09-4907-cv (2d Cir. July 21, 2010).....................................................................................6

Reeb v. Ohio Dep't of Rehab. & Corr.,
　　435 F.3d 639 (6th Cir. 2006) ................................................................................................44

Rivera v. Am. Home Prods. Corp.,
　　191 F.R.D. 45 (D.P.R. 1999) ................................................................................................41

Roth v. Sawyer-Cleator Lumber Co.,
　　16 F.3d 915 (8th Cir. 1994) ....................................................................................................9

Rothwell v. Chubb Life Ins. Co.,
　　191 F.R.D. 25 (D.N.H. 1998) ...............................................................................................35

Ruppert v. Principal Life Ins. Co.,
　　No. 4:07-cv-0344-JAJ, 2008 WL 3970872 (S.D. Iowa Aug. 27, 2008)................................19

In re Sepracor Inc. Sec. Litig.,
　　233 F.R.D. 52 (D. Mass. 2005).............................................................................................26

Sessions v. Owens-Illinois, Inc.,
　　267 F.R.D. 171 (M.D. Pa. 2010)...........................................................................................32

Shook v. Bd. of County Comm'rs of El Paso,
　　543 F.3d 597 (10th Cir. 2008) ..............................................................................................36

# TABLE OF AUTHORITIES
## (continued)

Page

Sigmon Coal Co. v. Apfel,
226 F.3d 291 (4th Cir. 2000) .................................................................................38

Smilow v. Sw. Bell Mobile Sys., Inc.,
323 F.3d 32 (1st Cir. 2003).............................................................................11, 42

Spann v. AOL Time Warner, Inc.,
219 F.R.D. 307 (S.D.N.Y. 2003) ....................................................................12, 23

Sprague v. Gen. Motors Corp.,
133 F.3d 388 (6th Cir. 1998) ................................................................................12

Stand Energy Corp. v. Columbia Gas Transmission Corp.,
No. 2:04-0867, 2008 WL 3891219 (S.D. W. Va. Aug. 19, 2008)..........................43

Stirman v. Exxon Corp.,
280 F.3d 554 (5th Cir. 2002) ..........................................................................22, 23

Taylor v. CSX Transp., Inc.,
264 F.R.D. 281 (N.D. Ohio 2007) .........................................................................34

Thomas v. SmithKline Beecham Corp.,
201 F.R.D. 386 (E.D. Pa. 2001)..............................................................................32

Thorn v. Jefferson-Pilot Life Ins. Co.,
445 F.3d 311 (4th Cir. 2006) ......................................................11, 39, 40, 42, 43

Tilley v. TJX Cos., Inc.,
345 F.3d 34 (1st Cir. 2003).......................................................................31, 32, 33

Tussey v. ABB, Inc.,
No. 06-04305-CV-NKL, 2007 WL 4289694 (W.D. Mo. Dec. 3, 2007) ................31

Unger v. Amedisys Inc.,
401 F.3d 316 (5th Cir. 2005) ................................................................................40

Van West v. Midland Nat'l Life Ins. Co.,
199 F.R.D. 448 (D.R.I. 2001) ..............................................................13, 22, 40, 43

Vega v. T-Mobile USA, Inc.,
564 F.3d 1256 (11th Cir. 2009) ......................................................................14, 43

Walter v. Int'l Ass'n of Machinists Pension Fund,
949 F.2d 310 (10th Cir. 1991) ................................................................................9

## TABLE OF AUTHORITIES
### (continued)

**Page**

Waste Mgmt. Holdings, Inc. v. Mowbray,
    208 F.3d 288, 298 (1st Cir. 2000).......................................................................41, 42

West v. AK Steel Corp. Ret. Accumulation Pension Plan,
    No. 1:02 CV 0001, 2005 WL 1745491 (S.D. Ohio July 25, 2005) .........................41

Zinser v. Acufix Research Inst., Inc.,
    253 F.3d 1180 (9th Cir. 2001) ................................................................................33

## STATUTES

28 U.S.C. § 2072(b) ......................................................................................................25

29 U.S.C. §§ 1001 et seq..............................................................................................1

29 U.S.C. § 1102(a)(1), (b)(4) ....................................................................................13

29 U.S.C. § 1104(a) ......................................................................................................8

29 U.S.C. § 1106(b) ......................................................................................................8

29 U.S.C. § 1109 .......................................................................................................9, 10

29 U.S.C. § 1113 ..........................................................................................................20

29 U.S.C. § 1113(2) ......................................................................................................2

29 U.S.C. § 1132(a)(1)(B) .......................................................................................9, 10

29 U.S.C. § 1132(a)(3)..........................................................................................8, 10, 37

29 U.S.C. § 1132(g) ....................................................................................................44

Fla. Stat. § 627.473 .....................................................................................................25

## OTHER AUTHORITIES

Arkansas Ins. Dep't Legal Div. Bulletin 26A-91……………………………………..25

Federal Rule of Civil Procedure 65(d).........................................................................36

Fed. R. Civ. P. 23 ............................................................................................... *passim*

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Ind. Code § 29-1-13-2.............................................................................................29

Ind. Code § 29-1-7.5-3.8..........................................................................................29

Kansas Ins. Dep't Bulletin 1995-22…………………………………….........................25

N.C. Admin. Code Tit. 11, R. 12.1603 .......................................................................25

North Dakota Dep't of Ins. Bulletin 2000-3………………………………………… ..............25

Moore's Fed. Prac. § 23.41[3][a]..............................................................................33

State of Colorado Division of Ins. Bulletin No. B-4.12..............................................25

I.     **INTRODUCTION**

By this action, Plaintiff is challenging Defendants' use of Retained Asset Accounts ("RAAs") to pay life insurance benefits to beneficiaries of thousands of ERISA[1]-governed life insurance benefit plans.[2]  Contrary to Plaintiff's sensational and factually inaccurate allegations of "sham" accounts and harm to consumers, RAAs are specifically recognized and well-regulated by several state insurance departments and provide significant benefits for beneficiaries when compared to the displaced practice of mailing a check.[3]  RAAs make the full amount of insurance benefits immediately available and pay interest on the funds as long as they remain in the account.  This provides important flexibility to beneficiaries during a difficult period in their lives.  As will be seen below, Plaintiff's vague and misleading allegations about this well-established and beneficial payment practice are intentionally calculated to mask serious and significant deficiencies in her effort to certify a class.

In asserting her claims as the proposed class action, Plaintiff is seeking to represent a broadly defined class consisting of 90,000–120,000 individuals who were beneficiaries of thousands of group life insurance policies pursuant to different ERISA plans sponsored by countless different employers and unions.  Plaintiff is overreaching.

First, to the extent claims such as Plaintiff's can proceed on a class basis, any class certified must be limited to beneficiaries paid benefits pursuant to the same ERISA-governed employee benefit plan that governed other putative class members' benefits.  The only reason Ms. Reynolds – or any putative class member – was entitled to a life insurance benefit in the first place is that the terms of an ERISA plan provided for those benefits.  The plan documents, including summary plan descriptions generally prepared by employers, provide terms that govern

---

[1]     The Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq.

[2]     All factual assertions in the Introduction section are discussed in greater detail, with citation to supporting documentation, in the Background section.  See infra at 4-10.

[3]     The National Association of Insurance Commissioners has recently issued a detailed Consumer Alert on RAAs that provides information on state regulators' views of the practice generally; it can be accessed at http://www.naic.org/documents/consumer_alert_raa.htm.

fiduciary actions relating to those benefits.  But the plan that governed Ms. Reynolds' benefits is materially different from the plan that governed other putative class members' benefits.  Indeed, a sampling of relevant SPDs establishes that such documents vary substantially in their terms regarding the mode of payment; some *require* payments via the CIGNAssurance Accounts Plaintiff challenges, others permit it, and still others are silent on the method of payment.  As recent precedent in this area demonstrates, minor variations in the governing language can be outcome determinative.  Therefore, Plaintiff has not established typicality, predominance or superiority for claims of beneficiaries paid pursuant to any plans other than the one pursuant to which benefits were paid to Ms. Reynolds.

Second, by including a time limitation in her proposed class definition, Plaintiff recognizes that the class should exclude time-barred claims.  But, she ignores that ERISA has two statutes of limitations and that any class certified must be limited to encompass only those claims that arose within the shorter of ERISA's two statutes of limitations for breach of fiduciary duty claims.  Plaintiff's claims arose less than three years prior to the filing of her original complaint, making it comfortably within the statute of limitations that requires that claims be filed within three years of plaintiff's "actual knowledge" of the breach.  29 U.S.C. § 1113(2).  Putative class members with claims arising between three and six years will be subject to the defense that they had such "actual knowledge," and, as such, Plaintiff's claims are not typical of those claims.  Moreover, even if Plaintiff's claims could be considered typical of such claims, the "actual knowledge" standard necessitates individualized inquiries into each class member's actual knowledge, making certification inappropriate.

Plaintiff's claims also are not typical of claims of beneficiaries that specifically requested or acknowledged payment via CIGNAssurance Account on their claim forms, or of those putative class members who reside in states where state regulators have specifically authorized and regulated this form of payment, as Defendants' compliance with such state-specific regulations strongly undermines allegations of breaches of fiduciary duty.

Lastly, Plaintiff has not met her burden of proving that certification under Rule 23(b) is appropriate.  In support of her bid for certification pursuant to the no-opt-out provisions of Rule 23(b)(1), Plaintiff attempts to cloak her claims in caselaw applicable to claims brought in a representative capacity *on behalf of* an employee benefit plan seeking recovery to a common trust.  Plaintiff has brought no such claim here, and mandatory no-opt-out certification pursuant to Rule 23(b)(1) would be inappropriate and raise serious due process concerns.  Similarly, Plaintiff has not established that certification pursuant to the no-opt-out provision of Rule 23(b)(2) is appropriate.  Plaintiff is not seeking *any* prospective injunctive or declaratory relief from which she or the class could benefit, much less relief that could be characterized as "predominating" over monetary relief, as required by Rule 23(b)(2).  Indeed, Ms. Reynolds' CIGNAssurance Account was cashed out before Plaintiff filed suit; all she seeks now are damages.  As such, a no-opt-out class under Rule 23(b)(2) would also be inappropriate and raise serious due process concerns.  Likewise, Plaintiff has failed to establish that certification pursuant to Rule 23(b)(3) is appropriate because she has not and cannot establish that common issues would predominate over individualized issues.  Nor has Plaintiff met the superiority requirement of Rule 23(b)(3).  In sum, Plaintiff is overly ambitious in seeking to certify this over-inclusive, overbroad class.

Rather, more accurately, Plaintiff's counsel is overly ambitious.  Plaintiff demonstrated at her deposition that she personally has no knowledge of the facts underlying the estate's claims, much less the claims she is pursuing on behalf of the putative class. Indeed, Plaintiff does not know what her claims are, or how the estate she represents may benefit from their pursuit.  In addition, Plaintiff has presented no evidence to overcome the obvious conflict between her fiduciary duties to the estate of Ms. Reynolds and her duties as a class representative.  In light of those facts, Plaintiff is not an adequate class representative as required under Rule 23(a)(4). Class certification should be denied.

## II.    BACKGROUND

### A.    Gladys Reynolds' CIGNAssurance Account And Plaintiff Brenda Otte

This case is brought by Brenda Otte, the administratrix of the estate of Gladys Reynolds. Ms. Reynolds' son, Jack Reynolds, was a participant in a life insurance plan sponsored by his former employer, Cummins, Inc. (the "Cummins Plan").  As a retired union employee, the Cummins Plan provided $5,000 to his beneficiary upon his death.[4]  Mr. Reynolds committed suicide in 2006, and his mother, Ms. Reynolds, submitted a claim for death benefits under the Cummins Plan in May 2007.[5]  The Cummins Plan benefits were insured by a policy issued by Life Insurance Company of North America ("LINA").[6]  Benefits were paid to Ms. Reynolds by creation of a CIGNAssurance Account and crediting the $5,000 to that account.  Ms. Reynolds had access to the funds at any time through a book of drafts.[7]  (Otte Tr. (Ex. D) at 68.)

Ms. Reynolds signed and returned an account information request form, which provided,

In addition, by signing below, I understand that my CIGNAssurance® Account is fully guaranteed by the insurance company, and is not insured by the Federal Deposit Insurance Corporation (FDIC) or any federal agency.

(Otte Tr. (Ex. D) at 73-75; Account Information Request Form (Otte Dep. Ex. 13) (Ex. I).)

---

[4]    Defendants have identified three SPDs potentially applicable to claims for Cummins Inc. life insurance benefits at the time Ms. Reynolds submitted her claim. Cummins Inc. LifeChoices SPD (Ex. A); LifeChoices for Cummins Inc. U.S. Plan Document Effective January 1, 2003 (Ex. B); Cummins Inc. Retired Diesel Workers Union Members Insurance Benefits SPD ("Cummins Retired DWU SPD") (Ex. C).  The Cummins Retired DWU SPD describes the benefit paid to Ms. Reynolds. See Cummins Retired DWU SPD (Ex. C) at D00000220-21.

[5]    (Tr. of 5/10/2010 Dep. of B. Otte ("Otte Tr.") (Ex. D) at 48; Preference Affidavit (Otte Dep. Ex. 5) (Ex. E); Reynolds Claim Form (Ex. F) at D00000133.)

[6]    Mr. Reynolds was a member of Class 32 under the policy pursuant to which he was paid.  (See LINA Issued Policy FLX-052037, covering Cummins Inc. employees and retirees, Revised and Reissued January 1, 2004 ("Cummins Policy") (Ex. G) at D00000366; September 2, 2010 Declaration of S. Suwan ("Suwan Decl.") (Ex. H) at ¶ 2.)

[7]    The drafts provided to CIGNAssurance account holders have an appearance and function like checks, and people frequently use the more common term "checkbook" to describe the book of drafts.  However, technically, account holders are provided a book of "drafts," not checks.  "Checks" are a specific type of draft that is drawn from an account at a bank.  Similar documents drawing on non–bank accounts are more properly referred to by the generic term "drafts."  For example, mutual funds with "check writing" privileges allow account holders to write "drafts" on the account, not checks.

From the moment she received the draftbook, Ms. Reynolds could have written herself a draft at any time for the full $5,000 and cashed or deposited that draft into a bank or investment account.[8]  In that respect, the access provided to the account via the draftbook was functionally equivalent to a check written to Ms. Reynolds by LINA for payment of death benefits.

The CIGNAssurance program also provided Ms. Reynolds additional benefits. Significantly, Ms. Reynolds was immediately able to write drafts to third parties without waiting for a deposited check to clear in her personal account.  Ms. Reynolds earned compounding interest on the $5,000 while held in the account.  (See Otte Dep. Ex. 9 (Ex. J).)  Ms. Reynolds also was provided additional valuable benefits, including access to free to grief counselors, free financial services counseling, and free legal counseling.  (Suwan Decl. (Ex. H) at ¶ 5.)

In 2008, Ms. Reynolds died.  Her estate thereafter requested a check for the full value of Mr. Reynolds' death benefits with interest.[9]  That request was granted and a check timely issued, but Ms. Reynolds' estate has not deposited or cashed that check.  (Otte Tr. (Ex. D) at 89-93.) Ms. Otte was subsequently named administratrix of Ms. Reynolds' estate after the initial executrix, Ms. Otte's mother Thelma Louise Otte, stepped down because she did not want to pursue this litigation on behalf of the estate.  (Otte Tr. (Ex. D) at 37-39.)

**B.    The CIGNAssurance Account Program**[10]

As noted above, once Ms. Reynolds' CIGNAssurance Account was credited with the life insurance benefits, she had full access to the funds in the account via the provided draftbook.  By

---

[8]    Ms. Reynolds was specifically notified of these facts when the draftbook was issued.  (See Otte Dep. Ex. 9 (Ex. J) (as produced by Plaintiff); Otte Tr. at 60-61.)

[9]    (Otte Dep. Exs. 26, 27 & 28 (Exs. K, L & M); Otte Tr. (Ex. D) at 83, 93-98.)

[10]   Plaintiff makes numerous assertions about how the CIGNAssurance Program, and RAA programs in general, operate based on documents produced by nonparties (e.g., State Street) and third-party publications, some of which are amateurish at best (e.g., retainedasset.com).  Because most of the "facts" asserted by reference to these sources are irrelevant to the present motion and appear to be included for merely atmospheric reasons, Defendants do not address these "facts" point by point. Defendants in no way concede the accuracy or relevance of any factual assertion in Plaintiff's Memorandum for any purpose, and specifically reserve their right to present admissible evidence at the appropriate time, such as in connection with a motion for summary judgment, establishing an accurate factual record.

providing interest to account holders from the moment of the account's creation, RAAs like CIGNAssurance Accounts, are a significant advantage when compared to a check from an insurance company, which earns no return until negotiated and the received funds are invested or deposited by the beneficiary.

When payment is made to a beneficiary of a LINA policy by crediting a CIGNAssurance Account, an account is created in the beneficiary's name that represents a liability on the books of Connecticut General Life Insurance Company ("CGLIC").[11]  Beneficiaries are provided with personalized drafts to access funds in the CIGNAssurance Account that are payable through State Street Bank, making use of State Street Bank's ability to clear the drafts through the Federal Reserve System.  (Suwan Decl. (Ex. H) at ¶ 3.)  Open Solutions handles all of the account-level administration for CGLIC, and acts as the hub of communication between CGLIC, account holders and State Street Bank.  (Suwan Decl. (Ex. H) at ¶ 4.)  It is repeatedly disclosed to account holders, both before and after accounts are established, that the CIGNAssurance Accounts are not bank deposits and are not insured by the FDIC or any other Federal Agency.[12] (See, e.g., Otte Dep. Exs. 9 & 13 (Exs. J & I).)

The putative class members in this action were, by definition, all paid pursuant to ERISA-governed employee welfare benefit plans.  (See Pl.'s Mem. at 1.)  By definition, those plans are sponsored by unions or employers.[13]  Thus, each plan sponsor is a sophisticated party

---

[11]   (Defs.' Second Supp. Resp. to Pl.'s Interrog. ("Defs.' Interrog. Resp.") (attached to Pl.'s Mem. as Ex. 2) at 37.)

[12]   Plaintiff suggests that Defendants have been less than forthright regarding the nature of the accounts because the funds are not segregated into individual physical accounts, but rather are recordkeeping entries.  Plaintiff is wrong.  In a case challenging another insurance company's practices with regard to its RAA program, the Second Circuit recently held that the payment via RAA was proper when not prohibited by the relevant documents.  See Rabin v. MONY Life Ins. Co., No. 09-4907-cv (2d Cir. July 21, 2010) (Summary Order) (attached as Ex. N).  As the Second Circuit explained, "Rabin cites no authority – and we are aware of none – requiring that banks or other financial institutions physically segregate customers' funds in order to establish individual accounts."  Id. at 9.

[13]   See 29 U.S.C. §1002 (defining "employee welfare benefit plan" as "any plan, fund, or program . . . established or maintained by an employer or by an employee organization, or by both" to provide specified benefits).

that has the ability to play an active role in negotiating the terms of the policy that insures the plans' obligations to its participants and beneficiaries.  When an individual beneficiary makes a claim for life insurance benefits, he or she does so as a beneficiary of the ERISA-governed plan and the claim is governed by the terms of the applicable plan.  The relevant plan document governing the claims of the individual beneficiaries is, generally, a summary plan description ("SPD") written by and/or approved by the plan sponsor.

For example, the SPD provision applicable to Ms. Reynolds' claim for benefits provides: "If there is a part of your insurance for loss of life for which there is no named beneficiary living at your death, that part will be paid in a lump sum . . . ."  (Cummins Retired DWU SPD (Ex. C) at 34, D00000221.)  By contrast, a 2003 UTC SPD relating to another plan administered by Defendants provides that "beneficiaries receive a personalized checkbook instead of a single lump sum check for life insurance proceeds over $5,000, wherever permitted by State law," along with many details about how the account functions.  (UTC SPD, January 1, 2003 (Ex. O) at 16, D00002126.)  Another SPD, for a SONY plan administered by Defendants, is completely silent regarding the form of payment.  (Sony June 2007 SPD (Ex. P) at D00000810-976.)

Since October 1, 2003, LINA alone has issued approximately 5,000 policies providing group life insurance to insure benefits provided by ERISA-governed plans.  (Suwan Decl. (Ex. H) at ¶ 9.)  Plaintiff's proposed class includes not only individuals paid pursuant to those polices, but also individuals paid pursuant to polices issued by LINA prior to October 1, 2003 that were still in effect during the proposed class period as well as policies issued by CGLIC and certain other subsidiaries of CIGNA Corporation.  (Pl.'s Mem. at 8.)  It is likely that each policy has one or more SPDs associated with it, and there are therefore thousands and thousands of SPDs applicable to the claims of members of the putative class.

Plaintiff asserts that beneficiaries cannot opt out of the CIGNAssurance payment method. (Pl.'s Mem. at 5.)  Plaintiff is wrong.[14]  Accounts can and do opt out of the CIGNAssurance program.  (Suwan Decl. (Ex. H) at ¶ 6.)  Additionally, individuals always have the option of requesting payment by check, and such requests are honored by Defendants.  (Suwan Decl. (Ex. H) at ¶ 7.)  As demonstrated by the estate of Ms. Reynolds, even after a CIGNAssurance Account is established, an account holder can request that the account be closed and a closeout check issued at any time.  (Otte Dep. Exs. 26 & 28 (Exs. K & M).)

### C. **Plaintiff's Claims**

Plaintiff summarizes her claims most clearly in the second paragraph of the First Amended Class Action Complaint:

> The action arises out of [Defendants'] practice of investing death benefits due under ERISA-governed employee benefit plans insured by [Defendants] for [Defendants'] own account without accounting fully to the beneficiaries for the profits [Defendants] earn[] through such investments.  Plaintiff asserts this practice violates 29 U.S.C. §1104(a)'s requirement that plan fiduciaries, such as [Defendants], discharge their duties with respect to ERISA plans solely in the interests of the plans' participants and beneficiaries, and 29 U.S.C. §1106(b)'s prohibition against plan fiduciaries dealing with plan assets in their own interest or for their own account.  Plaintiff brings this action pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), to enjoin the practice and to obtain other appropriate equitable relief to redress [Defendants'] violations of ERISA §§404 and 406, 29 U.S.C. §§1104 and 1106.

(Am. Compl. ¶ 2.)[15]

Plaintiff's claims rest entirely on the premise that the funds in the CIGNAssurance

Accounts are "plan assets."  They are not.  Mogel v. UNUM Life Ins. Co. of Am., 547 F.3d 23,

---

[14]   Plaintiff relies on an erroneous internal corporate document for this assertion.  (Pl's Mem. at 5 citing Suwan Dep. Ex. 10.)  Although the document was introduced as an exhibit at Ms. Suwan's deposition, she testified that she did not create it and that it is not used by the claims department. (Suwan Dep. (Ex. Q) at 119-21.)  At no point was Ms. Suwan asked about the accuracy of any assertion in the document, including the one cited by Plaintiff.  Id.

[15]   In Plaintiff's Memorandum in Support of her Motion for Class Certification, she additionally asserts that "to the extent that Defendants transfer plan assets to each other," Defendants "violate ERISA § 406(a)(1)(D) (29 U.S.C. §1106(a)(1)(D))."  (Pl.'s Mem. at 3-4.)  That claim does not appear anywhere in the Amended Complaint, and is not properly before the Court as a claim subject to class certification.

25 (1st Cir. 2008), upon which Plaintiff relies heavily for this conclusion, was determined on a motion to dismiss, accepting the <u>Mogel</u> plaintiff's factual allegations as true.  Upon a full evidentiary record, it will be apparent that the funds do not, and could not, constitute assets belonging to any plan.  To the contrary, Plaintiff acknowledges that the funds at issue are "funds belonging to the beneficiaries."  (Pl.'s Mem. at 2.)[16]

### D.     Claims Not Asserted By Plaintiff

Much of the caselaw drawn upon by Plaintiff in her brief arises in contexts significantly different than that presented here by Plaintiff's claims.  Therefore, it is important to recognize the precise contours of Plaintiff's claims by noting what claims Plaintiff is *not* pursuing.  Cf. <u>In</u>

---

[16]   Defendants will raise these issues at an appropriate time, on a motion for summary judgment.  But, it bears noting that, if the funds were truly plan assets, Plaintiff would have no basis for seeking a direct recovery.  As a court recently explained, individual plan participants or beneficiaries are not directly entitled to funds after it has been established that plan assets have been misappropriated and recovery to the plan is ordered:

> The Plaintiffs have demonstrated that there are no material factual issues to be resolved with respect to their claim that [defendants] improperly removed $487,138.08 from the Irotas Profit Sharing Plan to which they have asserted an interest. However, under 29 U.S.C. §1109, a fiduciary who breaches a duty is liable to the plan, not the individual beneficiaries. <u>Walter v. Int'l Ass'n of Machinists Pension Fund</u>, 949 F.2d 310 (10th Cir. 1991) (under section of ERISA governing breach of fiduciary duty, fiduciary who breaches duty is liable to the plan but not to the individual beneficiaries); <u>Kessen v. Plumbers' Pension Fund, Local 130</u>, 877 F. Supp. 1198, 1205 (N.D. Ill., 1995) (under section of ERISA which makes fiduciaries personally liable for breach of duties imposed upon them, liability for breach of fiduciary duty runs only to the plan and not to individual participants or beneficiaries). A breach of a fiduciary duty claim puts money back into the plan. To get money out of the plan, a participant must make a claim for benefits under 29 U.S.C. §1132(a)(1)(B). <u>Roth v. Sawyer-Cleator Lumber Co.</u>, 16 F.3d 915, 920 (8th Cir. 1994). To be entitled to summary judgment on such a claim, a plaintiff must assert a proper claim under the correct statutory section and establish the amount owing to him under the plan.

<u>Everidge v. Irotas Mfg. Co. LLC 401(k) Profit Sharing Plan</u>, No. 3:09-45-DCR, 2010 WL 2889655 at *3 (E.D. Ky. July 21, 2010) (slip copy).  Plaintiff's theory of the case ignores an important distinction between assets held by a plan, as a distinct legal entity, for future payment of benefits and amounts that constitute benefits payable from an insurer.  Cf. <u>Nahigian v. Leonard</u>, 233 F. Supp. 2d 151, 167-68 (D. Mass. 2002) (distinguishing between pension plans "where the benefits that the employee expects come directly from the money placed into the plan by the employer" and employee welfare plans where "the benefit expected by the employee is not the money that the employer pays into the plan to buy insurance, but rather the money that comes via insurance coverage").

re New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d 6, 17 (1st Cir. 2008) (in the

Rule 23 analysis courts must thoroughly examine plaintiff's theory of the case and "formulate

some prediction as to how specific issues will play out" (citation and quotation omitted)).  While

Plaintiff alludes to varied nefarious conduct, the claims on which she seeks certification are

specifically limited.

Plaintiff has brought suit under only ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3).

(See Am. Compl. ¶ 2.)  As such, Plaintiff is *not* seeking, on behalf of herself or others, *benefits

due* under the terms of any plan under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

Likewise, Plaintiff is *not* bringing suit under ERISA Section 502(a)(2) seeking relief under

ERISA Section 409, which provides, in relevant part, a means for an ERISA-governed plan to

recover directly from a breaching fiduciary:

> Any person who is a fiduciary with respect to a plan who breaches any of the
> responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter
> shall be personally liable to make good to such plan any losses to the plan
> resulting from each such breach, and to restore to such plan any profits of such
> fiduciary which have been made through use of assets of the plan by the fiduciary,
> and shall be subject to such other equitable or remedial relief as the court may
> deem appropriate.

29 U.S.C.A. § 1109.

Similarly, as Plaintiff is not alleging that benefit payments have been wrongfully

"delayed," Plaintiff is not pursuing interest on delayed benefit payments pursuant to any

provision of ERISA.  Finally, Plaintiff is not asserting any claim grounded in a finding that any

Defendant made any misrepresentation or actionable nondisclosure in a fiduciary capacity.

Having strategically chosen to omit these claims from the action, Plaintiff should not be

permitted to take snippets of precedent applicable to only those forgone claims – out of context –

as though they support her claims or her bid for class certification in this case.

## III.   <u>ARGUMENT</u>

"Plaintiffs have the burden of proving that class certification is appropriate, and to do so

they 'must establish the four elements of Rule 23(a) and one of the several elements of Rule

23(b).'" <u>DeRosa v. Mass. Bay Commuter Rail Co.</u>, 694 F. Supp. 2d 87, 95 (D. Mass. 2010) (quoting <u>Smilow v. Sw. Bell Mobile Sys., Inc.</u>, 323 F.3d 32, 38 (1st Cir. 2003)).  Plaintiff bears that burden with regard not only to her claims, but also Defendants' anticipated defenses.  <u>See</u> <u>Thorn v. Jefferson-Pilot Life Ins. Co.</u>, 445 F.3d 311, 322 (4th Cir. 2006)  (rejecting the argument that "because [defendant] bears the burden of proving the merits of its statute of limitations defense, it should also bear the burden of demonstrating that resolution of that defense cannot occur on a class-wide basis").[17]  There is "no exception to the rule that the plaintiff bears the burden of showing compliance with Rule 23."  <u>Id.</u>

> Rule 23(a) provides that class certification is warranted "*only* if":
>
> (1) the class is so numerous that joinder of all members is impracticable [numerosity]; (2) there are questions of law or fact common to the class [commonality]; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy].

Fed. R. Civ. P. 23(a) (emphasis added).  "[A]ctual, not presumed, conformance with Rule 23(a) [is] indispensable."  <u>Gen. Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 160 (1982).

"A district court must conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class."  <u>DeRosa</u>, 694 F. Supp. 2d at 95 (quoting <u>Smilow</u>, 323 F.3d at 38 (alteration removed)).  <u>See also</u> <u>Falcon</u>, 457 U.S. at 161 (A class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.").  "Accordingly, when considering disputed legal and factual premises for class certification, a district court may 'probe behind the pleadings to formulate some prediction as to how specific issues will play out.'"  <u>DeRosa</u>, 694 F. Supp. 2d at 95 (quoting <u>New Motor Vehicles</u>, 522 F.3d at 17).

"The likelihood of the plaintiffs' success on the merits . . . is not relevant to the issue of whether certification is proper."  <u>Thorn</u>, 445 F.3d at 319.  Nevertheless, "when a Rule 23

---

[17]  As the Fourth Circuit noted, "[t]here is no reason to believe that the defendant is any better suited than the named plaintiffs to prove whether an issue is common to the class simply because the defendant bears the burden of proving the merits of that issue." <u>Thorn</u>, 445 F.3d at 322.

requirement relies on a novel or complex theory . . . the district court must engage in a searching inquiry into the viability of that theory and the existence of the facts necessary for the theory to succeed." New Motor Vehicles, 522 F.3d at 26. That is, where a plaintiff purports to be able to proceed on a classwide basis because of a unique legal theory that obviates the need for individualized proof, the court must not take such representations at face value. See id.

Such rigorous analysis is vital to protecting absent class members' rights. As the Supreme Court explained in Falcon, because a class action binds nonparticipants to the results of litigation, courts must remain aware of the concern for "potential unfairness to the class members bound by the judgment if the framing of the class is overbroad . . . and the error of the tacit assumption . . . that all will be well . . . for surely the plaintiff will win and manna will fall on all members of the class." 457 U.S. at 161 (internal citation and quotation omitted).

Here, Plaintiff has not met her burden under Rule 23, as she has failed to establish adequacy or typicality pursuant to Rule 23(a). Even if she had done so, the proposed class could not be certified because Plaintiff has not met her burden of establishing that certification pursuant to any of Rule 23(b)'s provisions is appropriate.

## A.     **Plaintiff Has Not Established Typicality**

Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Importantly, this requires consideration of not only the plaintiff's claims but all defenses as well. Spann v. AOL Time Warner, Inc., 219 F.R.D. 307, 316 (S.D.N.Y. 2003) ("In assessing the typicality of the plaintiff's claims, the court must pay special attention to unique defenses that are not shared by the class representatives and members of the class."). "[T]he premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." Sprague v. Gen. Motors Corp., 133 F.3d 388, 399 (6th Cir. 1998).[18] "The typicality inquiry 'is designed to align the interests of the class

---

[18]    See also E. Tex. Motor Freight Sys. Inc. v. Rodriguez, 431 U.S. 395, 403 (1977) ("As [the Supreme Court] has repeatedly held, a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." (collecting cases)); McAdams v. Mass. Mut. Life Ins. Co., No. Civ. A. 99-30284-FHF, 2002 WL 1067449, at *4 (D. Mass. May 15, 2002)

and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals.'" DeRosa, 694 F. Supp. 2d at 100 (citation and internal quotation omitted).

The "claims of a purported class representative are not typical if, in order to prove the claims of other class members, the representative must prove something different from what is necessary to prove his own claim." Van West v. Midland Nat'l Life Ins. Co., 199 F.R.D. 448, 452 (D.R.I. 2001) (citation omitted) (also citing Falcon, 457 U.S. at 158 ("Falcon would need to prove much more than the validity of his own claim in order to prove the claims of the absentee class members, and thus his claims were not typical of the class.")).

Plaintiff has failed to establish that her claim is typical of her overbroad proposed class.

### 1.    Plaintiff Has Not Established Typicality For Putative Class Members' Claims Who Received Life Insurance Benefits From Defendants Pursuant To Different ERISA-Governed Employee Benefit Plans.

Plaintiff has not limited her proposed class definition to individuals who were paid life insurance benefits pursuant to a particular employee benefit plan.  Instead, Plaintiff seeks to represent individuals who were paid pursuant to over five thousand different policies,[19] whose claims for benefits were governed by at least as many plan documents.  Plaintiff is overreaching.

ERISA requires each covered plan to be "established and maintained pursuant to a written instrument" that "specifies the basis on which payments are made to and from the plan." 29 U.S.C. § 1102(a)(1), (b)(4); Kennedy v. Plan Adm'r for Dupont Sav. & Inv. Plan, 129 S. Ct. 865, 875 (2009).   Thus, the scope of Defendants' duties is dictated, in part, by the terms of the plan documents governing each beneficiary's claim.  Here, that includes SPDs for the benefit plans.  That necessarily means that the significant variances among SPDs applicable to putative

---

("[T]his requirement is designed to ensure that the representative parties adequately represent the interest of all class members, particularly those not present for the litigation. . . . Accordingly, the requirement is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." (citations and internal quotations omitted)).

[19]    (Suwan Decl. (Ex. H) at ¶ 9.)

class members' claims preclude a finding of typicality for any proposed class members who were not subject to the same SPD that provided for benefits upon the death of Mr. Reynolds.

It is well established that variances between documents controlling putative class members' claims may preclude a finding of typicality.  See DeRosa, 694 F. Supp. 2d at 102 (holding typicality not satisfied in discrimination action alleging disparate impact where the plaintiff "challenged only one test's applicability to one job, which is insufficient to find her 'typical' of putative class members who took seven tests, for 15 different positions, across three departments").[20]

Regarding challenges to RAAs, only two cases have had decisions issued addressing claims similar to those raised in this case, Mogel, 547 F.3d at 25 and Faber v. Met. Life Ins., 2009 WL 3415369 (S.D.N.Y. Oct. 23, 2009).[21]  The decisions in those cases reach different conclusions, precisely because of the different language applicable in both cases.

The Mogel plaintiffs were beneficiaries under policies issued to employee benefit plans which provided that "[u]nless otherwise elected, payment for loss of life will be made in one lump sum."  547 F.3d at 25.  The First Circuit reversed dismissal of the action, in part, because, taking the allegations of the complaint as true, the creation of an RAA was not a "lump sum" payment:

> [D]elivery of the checkbook did not constitute a "lump sum payment" called for by the policies. . . . Thus UNUM cannot be said to have completed its fiduciary functions under the plan when it set up the Security Accounts and mailed the checkbooks, retaining for its use the funds due until they were withdrawn.

---

[20]  See also Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1276 (11th Cir. 2009) ("[T]he claims Vega has asserted on behalf of the class depend on the terms, conditions, and mutual understandings regarding compensation that each class member had with T-Mobile. Without a common contract, it is impossible for Vega to bring a case typical of all other class members."); Moore v. Am. Fed'n of Television & Radio Artists, 216 F.3d 1236, 1241-42 (11th Cir. 2000) (doubting existence of typicality where "the district court would have to examine each [class member's] contract"); Clarke ex rel. Pickard v. Ford Motor Co., 228 F.R.D. 631, 634 (E.D. Wis. 2005) (decertifying class where evidence established that the named plaintiff's claim was governed by a plan document that differed materially from the plan governing absent class members such that the named plaintiff was entitled to recover, but absent class members were not).

[21]  The Faber decision has been appealed to the Second Circuit.

Id. at 26.

In contrast, the Faber plaintiffs were beneficiaries of employee benefit plans whose SPDs specifically provided for payment via RAA:

> The Kodak [SPD] states that "[p]ayment of a death benefit of $7,500 or more is made under MetLife's [RAA program]. The death benefit amount is deposited in an interest bearing money market account and your beneficiary is provided with a checkbook to use for writing checks to withdraw funds." The GM Plan SPD similarly provided that "[i]f the benefit from a single claim is $6,000, or more, your beneficiary may receive basic life insurance benefits under one of several options available under [MetLife's RAA] Program. . . . A personalized checkbook allows your beneficiary to easily use all, or a portion, of the money. Funds left with the insurance company earn interest at competitive rates."

Faber, 2009 WL 3415369, at *1. Because of this fact, the Faber court dismissed the action, holding that the plaintiffs had received all they were entitled to under the terms of the plans, and distinguished Mogel on the basis of the SPD language. Faber, 2009 WL 3415369, at *7 n.7.[22]

Here, the governing SPDs applicable to each putative class member's claim for death benefits vary widely in their payment provisions and references to payment via RAA.

A sampling of SPD payment provisions potentially applicable to putative class members demonstrates these points:

- "Payment will be made in one sum via an interest bearing checking account. If the benefit amount is less than $5,000, payment will be issued as a lump sum." Quest Diagnostics SPD, Dated 01/08 (Ex. T) at D-20, D00001590.

- "Benefits due under the Policy for a loss, other than a loss for which the Policy provides installment payments, will be paid immediately upon receipt of due written proof of such loss." Cummins Inc. LifeChoices SPD (Ex. A) at 16, D00000075.

---

[22]  Indeed, the significance of such differing language was acknowledged by counsel for Plaintiff in the course of their settlement of the Mogel case by excluding beneficiaries paid pursuant to policies specifying payment via RAA. See Mogel v. UNUM, No. 07-CA-10955 NMG (D. Mass.) (Stipulation of Settlement, filed June 9, 2010, (copy attached as Ex. R) at ¶ 1.6). The Mogel settlement resolved only the claims paid pursuant to policies specifying payment via "lump sum check," and excluded claims based on policies with different language. Mogel v. UNUM, No. 07-CA-10955 NMG (D. Mass.) (Plaintiffs' Memorandum In Support Of Motion For Preliminary Approval Of Settlement Agreement, filed June 9, 2010, (copy attached as Ex. S) at 8).

- "Once the claim is approved, your beneficiary will have a choice to receive payment as monthly installments, an interest bearing checking account, a lump sum check payable to the beneficiaries or, if the benefit is less than $5,000, payment will be made in a lump sum amount." LifeChoices for Cummins Inc. U.S. Plan Document Effective January 1, 2003 (Ex. B) at 16, D00000174.

- "Beneficiaries who receive . . . insurance proceeds of $5,000 or more will have their benefit deposited into a special no-fee checking account called CIGNA Resource Manager.  This account is a secure place for beneficiaries to keep the proceeds while they decide how best to use them.  The funds will earn a competitive rate of interest and can be accessed at any time.  Checks can be written against the funds, from $250 up to the full balance of the account."  EDS 2005 Benefits Handbook (Ex. U) at 59, 64, D00001845, D00001850.

- "Coping with the loss of a loved one is one of life's most stressful occurrences.  The Resource Manager (formerly Horizon Account) relieves some of the pressure, because beneficiaries receive a personalized checkbook instead of a single lump sum check for life insurance proceeds over $5,000, wherever permitted by State law.  The beneficiary receives a competitive money market rate guaranteed by Connecticut General Life Insurance Company to equal or exceed the previous week's Bank Rate Monitor Index (BRM).  The BRM is the average annual effective yield earned on the money market checking accounts offered by the 100 largest banks and thrifts across the United States.  This allows the beneficiary to defer important decisions at a difficult time while still providing security and immediate access to funds.

  Beneficiaries receive monthly statements for their CIGNA Resource Manager accounts showing the balance, any withdrawals and the interest earned.  On a yearly basis, beneficiaries receive 1099 income tax forms showing the interest earned on the account which has been reported to the IRS.  Beneficiaries may write checks for any amount from $250 up to the full account balance.  Checking privileges are cost-free, with no maintenance charges, per-check fees or penalties for withdrawal.  However, there are nominal charges for checks returned unpaid, stop payments and extra copies of a check or monthly statement.  Beneficiaries may maintain a balance in their account for as long as they want.  However, if an account falls below $250, the remaining balance is automatically sent to the beneficiary in the form of a check and the account is closed."  UTC Summary Plan Description, January 1, 2003 (Ex. O) at 16, D00002126.

- "If the insurance benefit is $5,000 or more, CIGNA will automatically open a free, interest-bearing account in the participant's name or his or her beneficiary's name.  This account, call the CIGNA Assurance [sic], is a safe and secure place to keep the proceeds while the beneficiary decides

how best to use them.  A personal checkbook will be mailed to the beneficiary once the claim has been approved.  To use the money in the account, the beneficiary simply writes a check for $250 or more.  Any amount that remains in the account will continue to earn interest at competitive rates."  2006 SAIC Summary Plan Description (Ex. V) at D00002044.

- The Sony June 2007 SPD is silent regarding the form of payment.  Sony June 2007 SPD (Ex. P) at D00000810-976.

The SPD that applied to Mr. Reynolds' life insurance benefits itself contains two payment provisions:

- For designated beneficiaries, the SPD provides:  "After your death your beneficiary may:  a. choose a mode of payment, if you did not choose one. b. name a person to receive any amount which would be paid to the beneficiary's estate."   Cummins Retired DWU SPD (Ex. C) at 33, D00000220.

- The SPD also provides:  "If there is a part of your insurance for loss of life for which there is no named beneficiary living at your death, that part will be paid in a lump sum to the survivors in the first surviving class of those that follow:  your (a) spouse; (b) children; (c) parents; or (d) brothers and sisters."  Cummins Retired DWU SPD (Ex. C) at 34, D00000221.

Mr. Reynolds died without having named a beneficiary; therefore, the second provision requiring payment "in a lump sum" applies.  Defendants will establish, on a full evidentiary record, that payment via CIGNAssurance Account constitutes a "lump sum" payment and that the funds at issue do not constitute "plan assets."[23]  But those are different issues than those that will need to be litigated as to beneficiaries under the Quest, EDS and UTC SPDs, or any of the other SPDs that govern various putative class members' claims that do not contain the phrase "lump sum."  For example, for claims governed by SPDs allowing for a choice of payment methods, the parties will litigate whether an affirmative choice was made, either on claim forms or subsequent forms calling for the beneficiaries' signatures.  With regard to SPDs specifically calling for payment via RAA, Defendants should prevail as a matter of law, as in Faber.  But

---

[23]   Mogel, 547 F.3d 23, was a decision on a motion to dismiss, accepting the Mogel plaintiff's factual allegations as true

regardless, Plaintiff has no incentive to vigorously pursue such claims on behalf of those absent class members subject to plan provisions that vary from those that affected her.

No doubt, some SPDs contain arguably ambiguous language that could become a major focus of the litigation because, as demonstrated by Mogel and Faber, minor differences could substantially impact the outcome. Where there are ambiguities regarding the permissible method(s) of payment in the applicable SPD, additional plan-specific inquiries will be necessary. "Under ERISA, unambiguous language in a plan is enforced according to its terms." Balestracci v. NSTAR Elec. & Gas Corp., 449 F.3d 224, 230 (1st Cir. 2006). If there is an ambiguity, the Court would first determine whether there is a plan administrator with authority to interpret the plan, because, under such circumstances, the Court must give deference to such administrators (which may or may not be LINA and/or CGLIC under the terms of each plan). See Conkright v. Frommert, 130 S. Ct. 1640, 1644 (2010) ("[A]n ERISA plan administrator with discretionary authority to interpret a plan is entitled to deference in exercising that discretion.") If *de novo* review is required, and "a party demonstrates ambiguity in a plan on a particular question, reference may be made to extrinsic evidence to determine the parties' intended meaning." Balestracci, 449 F.3d at 230. Thus, in order to interpret any ambiguous SPDs, the Court may need to consider, among other things, the testimony and understanding of the particular employer that established the particular plan pursuant to which each beneficiary was paid. See Allen v. Adage, Inc., 967 F.2d 695, 702 (1st Cir. 1992) (examining extrinsic evidence of parties' intent in interpreting ERISA plan).

The Eastern District of Missouri recently denied class certification under similar circumstances. In denying the motion by a participant in a single plan to certify a class consisting of participants in many plans for claims brought under ERISA against an insurer to those plans, the court held that the plaintiffs failed to establish commonality and typicality with persons in other plans, because they failed to establish that the relevant plan terms in the plan governing his claim were "similar, if not identical, to language in other plans." Chorosevic v. MetLife Choices, No. 4:05cv2394 CAS, 2007 WL 2159475, *8 (E.D. Mo. July 26, 2007) aff'd

by Chorosevic v. MetLife Choices, 600 F.3d 934 (8th Cir. 2010) (not reaching class certification issues).  See also Ruppert v. Principal Life Ins. Co., No. 4:07-cv-0344-JAJ, 2008 WL 3970872 (S.D. Iowa Aug. 27, 2008).  (Claims against service provider on behalf of all 401(k) plans serviced by defendant could not be certified because plaintiff failed to meet the commonality and typicality requirements due to the varied representations and funds provided to each plan.)

In summary, even if Plaintiff satisfied all other requirements of Rule 23, she could be named as the representative of only individuals paid pursuant to the same ERISA plan that governed her claim.

> **2.     Plaintiff Has Not Established Typicality Or Adequacy For Putative Class Members' Claims That Arose Prior To September 15, 2006 Because Of The Applicability Of ERISA's Three-Year Statute Of Limitations To Such Claims.**

Plaintiff's proposed class is also overbroad because her personal claims are timely, but she seeks to represent class members whose claims are subject to an individualized statute of limitations defense.  Although Plaintiff has recognized that she cannot represent putative class members who are subject to a statute of limitations defense by limiting her proposed class definition based on ERISA's six-year statute of limitations period, she has failed to take into account the applicability of ERISA's shorter three-year statute of limitations to the proposed class claims.

> a.     The applicability of ERISA's three-year statute of limitations would be a focus of any litigation that included class claims arising prior to September 15, 2006.

ERISA Section 413 provides for a six-year statute of limitations for breaches of fiduciary duties and obligations, except where the plaintiff has "actual knowledge" of the breach or violation, in which case a shorter three-year period applies:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of –
>
> (1) six years after (A) the date of the last action which constituted a part of the

breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

**(2) *three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation*.**

29 U.S.C. § 1113 (emphasis added).

A "rigorous analysis" of the actual knowledge standard, as applied in the First Circuit, reveals that any attempt to overcome the application of the three-year statute of limitations would require vigorous litigation on the part of those pursuing the claim. The First Circuit has established that, in order to have "actual knowledge," a plaintiff must have actual knowledge of the facts constituting the breach. Edes v. Verizon Commc'ns, Inc., 417 F.3d 133, 142 (1st Cir. 2005) ("[T]here cannot be actual knowledge of a violation for purposes of the limitation period unless a plaintiff knows the essential facts of the transaction or conduct constituting the violation." (citation and internal quotations omitted)). This inquiry requires an examination of what each putative class member *actually knew*, and knowledge cannot be imputed to meet the standard. Id. ("The amendment to ERISA § 413 means that knowledge of *facts* cannot be attributed to plaintiffs who have no actual knowledge of them." (emphasis added)). "Actual knowledge" does not, however, require a complete understanding of the law, or even that a viable claim exists:

> As the facts alleged in their complaint establish, Plaintiffs knew in April 1994 that they were not classified as employees on GTE's direct payroll. At the same time, Plaintiffs received no ERISA benefits from GTE. These facts establish that Plaintiffs had actual knowledge that if Defendants had a fiduciary duty to classify them as eligible for ERISA plan participation and/or to design their plans accordingly, they had breached that duty. Accordingly, Plaintiffs need not have had actual knowledge of the plans' eligibility criteria to start the statute of limitations running.

Edes, 417 F.3d at 142.[24]

---

[24]   See also Bishop v. Lucent Techs., Inc., 520 F.3d 516, 543 (6th Cir. 2008) (three-year statute bars ERISA breach of fiduciary duty action where the alleged breach occurred more than three years prior to the complaint, the complaint appeared time barred on its face, and plaintiffs did not seek leave to amend to allege the time of actual knowledge); Ortega-Candelaria v. Johnson & Johnson, No. Civ. 08-2382, 2009 WL 1812423, at *3 (D.P.R. June 25, 2009) (where the plaintiff accused defendants of a breach of fiduciary duty in violating a long-term disability plan by denying him benefits, the three-

The "actual knowledge" standard requires a fact-intensive inquiry, and the legal application of the standard to the facts at bar will require fact-specific judicial determinations regarding both what constitutes "actual knowledge" under the circumstances and whether and when each putative class member had the requisite knowledge. See Edes, 417 F.3d at 141 (it "is difficult to say in the abstract precisely what constitutes 'actual knowledge' of a 'breach or violation'" (citation and internal quotations omitted)). See also Browning v. Tiger's Eye Benefits Consulting, 313 F. App'x 656, 661 (4th Cir. 2009) (unpublished) (adopting the standard articulated by the First Circuit in Edes, noting that "the appropriate inquiry is fact-intensive").

The First Circuit has specifically recognized that there is not a bright line rule that can be applied in all cases:

> [D]etermining the meaning of complex transactions may take some time; mere knowledge of facts indicating that "something was awry" does not always mean there is actual knowledge of a violation. . . .  On the other hand, we do not think Congress intended the actual knowledge requirement to excuse willful blindness by a plaintiff.

Edes, 417 F.3d at 142 (citations and internal quotations omitted).[25]

Here, Defendants will present substantial evidence establishing that, because of disclosures provided by Defendants, beneficiaries had actual knowledge of the payment of benefits by CIGNAssurance Account and the account's features at the time the account was established.  Such disclosures include:

- CIGNAssurance Accounts are not bank deposits/accounts (Otte Dep. Ex. 8 (Ex. W) at Otte00138; Otte Dep. Ex. 9 (Ex. J) at Otte00136.)

---

year period began to run "at the latest, when Defendants notified him of their final decision to deny him benefits under the LTD Plan" as that constituted "actual knowledge" of the alleged breach).

[25] See also Martin v. Consultants & Adm'rs, Inc., 966 F.2d 1078, 1086 (7th Cir. 1992) ("[S]omewhere between 'every last detail' and 'something was awry' lies the requisite knowledge of an ERISA violation. The proper characterization will usually turn in part on the complexity of the underlying factual transaction, the complexity of the legal claim and the egregiousness of the alleged violation. Beyond such generalizations, however, we can only say that judges, faced with particular contexts and relying on their 'situation sense,' must make the determination.")

- CIGNAssurance Accounts are not insured by the Federal Deposit Insurance Corporation or any other federal agency (Otte Dep. Ex. 8 (Ex. W) at Otte00138; Otte Dep. Ex. 9 (Ex. J) at Otte00136.)

- CIGNAssurance Accounts earn interest comparable to a money market checking account (Otte Dep. Ex. 8 (Ex. W) at Otte00138.)

- CIGNAssurance Accounts earn interest based on the Bank Rate Monitor Index, which is the average annual effective yield earned on money market accounts offered by 100 large U.S. Banks and Thrifts (Otte Dep. Ex. 9 (Ex. J) at Otte00137.)

Additionally, it is immediately apparent to a beneficiary that he or she has not received a check for the amount of the life insurance, but instead received the welcome kit explaining the CIGNAssurance Account, along with a book of drafts to access the funds in the account. Likewise, those beneficiaries that completed a claim form would have been on notice regarding the CIGNAssurance form of payment, and, depending on how they completed the form, may have even provided express consent.[26]

      b.     Because Plaintiff's claims arose after September 15, 2006, her claims are not typical of claims that are potentially subject to the three-year statute of limitations.

As Ms. Otte's claims arose well within the three-year period, she has no interest in litigating the issues relevant to the statute-of-limitations defense.   A sister court within the First Circuit found typicality lacking under similar circumstances:

> Because Van West's claim rests not only on literature allegedly distributed to all prospective purchasers, but also on oral representations made to him by his agent or broker, the evidence required to prove his claim would differ considerably from the evidence required to prove the claims of other class members. Thus, Van West might prevail by showing that a particular agent made false representations to him, in which case he would have no need or incentive to present the additional facts necessary to prove that other agents made misrepresentations to other class members.

Van West, 199 F.R.D. at 453.  See also Stirman v. Exxon Corp., 280 F.3d 554, 563 n.7 (5th Cir. 2002) (reason to suspect plaintiff not an adequate representative based on lack of typicality

---

[26] See infra at 23-25 regarding disclosures and consent to payment via CIGNAssurance on the varying claim forms and Plaintiff's lack of typicality for claims of putative class members that signed claim forms.

because "if one of her leases is more valuable than the others, she has an incentive to litigate claims relating to that lease over other claims"); Spann, 219 F.R.D. at 320-21 (typicality and adequacy not satisfied where absent class members were subject to defenses based on releases and proposed class representatives were not because "the enforceability of the . . . [r]eleases as to many class members, an issue in which the three Plaintiffs may not have any stake, has the potential to become central to this litigation").  Simply put, Plaintiff "has no incentive to fully litigate those claims not applicable to her," and she therefore cannot represent the proposed class. Stirman, 280 F.3d at 563 n.7. [27]

### 3.   Plaintiff Has Not Established Typicality For Putative Class Members Who Signed Claim Forms Explicitly Acknowledging And/Or Selecting Payment By CIGNAssurance Account.

At present, Defendants do not have a claim form signed by Ms. Reynolds for the benefits she received.  Although LINA prefers to receive signed claim forms from all beneficiaries, because of its obligation to make prompt payment of life insurance benefits, LINA sometimes makes payment without receiving a signed claim form where it otherwise has sufficient information to do so.  (Suwan Decl. (Ex. H) at ¶ 8.)  Claim forms used during the proposed class period varied with regard to disclosures regarding the CIGNAssurance Account and the ability of an individual to affirmatively agree to that payment method:

- A 2002 issued[28] Group/Association claim form contained a disclosure regarding the "Resource Manager Program," the predecessor to CIGNAssurance, and invited residents of certain states to affirmative elect the program by checking a box and signing.  (Suwan Dep. Ex. P-19 (Ex. X) at D00000772; Suwan Tr. (Ex. Q) at 151.)

- June 2004, April 2005 issued Group/Association claim forms contained a disclosure regarding the program, and a bold statement instructing that

---

[27]   In addition to destroying typicality for Ms. Otte's bid to represent putative class members who had CIGNAssurance Accounts established between three and six years prior to the filing of the complaint, the individualized inquiry required by the "actual knowledge" standard also precludes a finding of predominance.  See infra at 40-43.

[28]   The date a form was issued refers to the date the particular version of the form was first released for use; prior versions of claim forms remain in use after new versions have been issued, and claims submitted on such prior versions may be approved.  (See Suwan Tr. (Ex. Q) at 95-96.)

residents of certain states could elect to participate in the CIGNAssurance Program by checking a box and signing their name.  (Suwan Dep. Ex. P-3 (Ex. Y) at D00000766; Suwan Dep. Ex. P-4 (Ex. Z) at D00000560; Suwan Tr. (Ex. Q) at 94-95, 101.) Residents of other states may have checked and signed as well.

- October 2005, July 2006, September 2006, January 2008, April 2009 and May 2009 issued Group/Association claim form invited all beneficiaries to sign after a complete disclosure of the program, and a bolded statement that "I understand that if my benefit is at least $5,000, I will receive a CIGNAssurance® Account.  If I wish to receive my proceeds as a lump sum payment, I may simply write a draft for the total amount of the account."  (Suwan Dep. Ex. P-5 (Ex. AA) at D00000575; Suwan Dep. Ex. P-6 (Ex. BB) at D00000580; Suwan Dep. Ex. P-7 (Ex. CC) at D00000585; Suwan Dep. Ex. P-18 (Ex. DD) at D00000555; Suwan Dep. Ex. P-8 (Ex. EE) at D00000565; Suwan Dep. Ex. P-9 (Ex. FF) at D00000570; Suwan Tr. (Ex. Q) at 108, 111, 113-16, 151.)

- In April 2002, two Group Universal Life/Group Variable Life ("GUL/GVUL") claim forms were issued.  Both contain disclosures about CIGNA Resource Manager on the front page, but only that provided to residents of certain states contained an affirmative authorization for participation in the program.  (Compare Suwan Dep. Ex. P-20 (Ex. GG) at D0000078 with Suwan Dep. Ex. P-21 (Ex. HH) at D00000782; Suwan Tr. (Ex. Q) at 153.)  In subsequent years, a single form was used for all states. (Suwan Tr. (Ex. Q) at 158-59.)

- 2004 issued GUL/GVUL claim forms contain disclosures regarding the CIGNAssurance program on the front page, and also a full disclosure with an invitation for residents of certain states to affirmatively elect participation in CIGNAssurance by checking a box and signing. (Suwan Dep. Ex. P-22 (Ex. II) at D00000783, 786; Suwan Tr. (Ex. Q) at 153.)

- September 2006, December 2007 and February 2010 issued GUL/GVUL claim forms described the CIGNAssurance Program on the front page and invited all beneficiaries to sign after a complete disclosure of the program, and contained a bolded statement that "I understand that if my benefit is at least $5,000, I will receive a CIGNAssurance® Account.  If I wish to receive my proceeds as a lump sum payment, I may simply write a draft for the total amount of the account."  (Suwan Dep. Ex. P-23 (Ex. JJ) at D00000789, 792; Suwan Dep. Ex. P-24 (Ex. KK) at D00000795, 798; Suwan Dep. Ex. P-25 (Ex. LL) at D00000801, 804; Suwan Tr. (Ex. Q) at 153.)

For every person that gave affirmative consent, Defendants will be able to establish that the parties entered into a new, mutually consented, contractual relationship regarding the CIGNAssurance Account that was completely independent of Defendants' obligations to

beneficiaries under ERISA.  Moreover, that Plaintiff may forgo reliance on these forms is irrelevant, because Rule 23 cannot impair Defendants' right to rely on such disclosures.[29]  As Ms. Reynolds never signed a claim form, and did not provide affirmative consent prior to the establishment of her account,[30] Plaintiff cannot represent absent class members who did, and she has no incentive to vigorously pursue their claims.  Plaintiff's motion should therefore be denied.

> **4.    Plaintiff Has Not Established Typicality For Putative Class Members Residing In States That Have Specifically Approved The RAA Payment Method.**

Several states have statutes, rules or agency interpretations specifically addressing payment via RAA, including Arkansas, Colorado, Florida, Kansas, Maryland, Nevada, North Carolina, and North Dakota.[31]  Where state regulators have specifically considered the RAA payment method and Defendants have acted in accord with the applicable rules, it will be much more difficult for Plaintiff to establish that Defendants' actions – in conformity with those state guidelines – constituted breaches of fiduciary duty.  Plaintiff has no incentive to vigorously pursue such claims, as her claim is unburdened by the applicability of such state regulations.

> **B.    Plaintiff Has Not Established That She Is An Adequate Class Representative.**

"Rule 23(a)(4) requires that 'the representative parties will fairly and adequately protect the interests of the class.'"  <u>DeRosa</u>, 694 F. Supp. 2d at 100 (quoting Fed. R. Civ. P. 23(a)(4)).

---

[29]    As the Supreme Court held, "no reading of [Rule 23] can ignore the [Rules Enabling Act's] mandate that rules of procedure 'shall not abridge, enlarge or modify any substantive right.'" <u>Ortiz v. Fibreboard Corp.</u>, 527 U.S. 815, 845 (1999) (quoting 28 U.S.C. § 2072(b) (additional citations omitted)).

[30]    Ms. Reynolds did, however, affirmatively acknowledge and consent to the continuation of the CIGNAssurance Account when she completed the CIGNAssurance Account information form.  (<u>See</u> Otte Tr. (Ex. D) at 73-75; Account Information Request Form (Otte Dep. Ex. 13) (Ex. I).)

[31]    <u>See</u> Arkansas Ins. Dep't Legal Div. Bulletin 26A-91, Dec. 26, 1991 (attached as Ex. MM); State of Colorado Division of Ins. Bulletin No. B-4.12, reissued May 8, 2007 (originally issued as Bulletin 12-03, Sept. 30, 2003) (attached as Ex. NN); Fla. Stat. § 627.473; Kansas Ins. Dep't Bulletin 1995-22, from Kathleen Sebelius, Comm. of Ins., Dec. 8, 1995 (attached as Ex. OO); COMAR 31.09.14.01-05 (taking effect July 1, 2010); N.R.S. 687B.300; N.C. Admin. Code Tit. 11, R. 12.1603; North Dakota Dep't of Ins. Bulletin 2000-3, Glenn Pomeroy, Commissioner, Aug. 3, 2000 (attached as Ex. PP).

As with all of the elements of Rule 23, Plaintiff has the burden of proof.  See, e.g., Berger v. Compaq Computer Corp., 257 F.3d 475, 480-81 (5th Cir. 2001) (vacating grant of class certification and holding that the district court erred when "it improperly shifted the burden of proof to the defendants by adopting a presumption that the class representatives and their counsel are adequate in the absence of specific proof to the contrary").

> **1.      Plaintiff Has Not Established That She Has Any Familiarity With: (A) The Claims She Is Asserting, (B) The Facts On Which Her Claims Are Based, And (C) The Role Of A Class Representative.**

While the bar is not set high for class representatives to be considered adequate, certain minimum standards must be met.  "[C]lass representatives need not have expert knowledge of the subject matter of the suit, may rely on class counsel for guidance, and need not be subjectively interested in the case, *as long as the representatives have not virtually abdicated control of the case to counsel*."  Carrier v. Am. Bankers Life Assur. Co. of Fla., No. 05-CV-430-JD, 2008 WL 312657, at *9-10 (D.N.H. Feb. 1, 2008) (emphasis added).  See also Ogden v. AmeriCredit Corp., 225 F.R.D. 529, 534 (N.D. Tex. 2005) ("[W]hile 'class representatives need not be legal scholars and are entitled to rely on counsel, [they] do need to know more than that they were 'involved in a bad business deal.'" (quoting Berger, 257 F.3d at 483)).  Plaintiff has failed to hurdle even this low bar.

To the contrary, Plaintiff's own deposition testimony demonstrates an utter lack of knowledge about the claims alleged, the facts underlying her own claims, and the role of a class representative in supervising the litigation.  See In re Sepracor Inc. Sec. Litig., 233 F.R.D. 52, 55 (D. Mass. 2005) (denying a proposed representative's motion for class certification because "[h]is minimal familiarity with the basic facts of the claims, deference on matters crucial to the case, and lack of interest in pursuing the suit, render [plaintiff] an inadequate class representative").

Ms. Otte demonstrated no understanding of the claims she is asserting in this action:

Q.  Ms. Otte, do you understand what I'm referring to when I refer to the CIGNA assurance account?

A.  You can explain further and maybe - -

Q.  I'll ask again.  I know this is frustrating, but I get . . . to ask the questions here.  What is a CIGNA assurance account?

A.  I guess I'm not sure what you - - what you are referring to.  Can you explain further?  I mean, ask it in a different way?

Q.  Do you understand that Ms. Reynolds was sent a book of drafts like a checkbook after her claim for life insurance relating to the death of Jack Reynolds was approved?

A.  I saw those, the checks, just visually saw them.

Q.  Do you know what those checks were for?

A.  To draw money out of an account.

Q.  And what account would those checks draw money out of?

A.  I guess it's the account CIGNA had set up.  I don't know the exact name of it.

Q.  Do you know when CIGNA set up that account?

A.  No.

Q.  Do your allegations in this lawsuit have anything to do with that account that CIGNA set up?
    Mr. Casurella:  If you know.
    The witness:  I don't know for sure.

(Otte Tr. (Ex. D) at 23-24.)

Ms. Otte could not articulate the nature of the claims she is asserting, and she testified that it "sound[ed] correct" that she is alleging that no interest was paid on the benefits paid to Ms. Reynolds.  (Otte Tr. (Ex. D) at 21-28.)  Indeed, Ms. Otte testified that she would have been surprised to learn that any interest had been paid.  (Otte Tr. (Ex. D) at 27-28.)[32]  She did not even know whether she is alleging that Defendants violated the law, and has no familiarity with ERISA.  (Otte Tr. (Ex. D) at 33-34.)

Ms. Otte's deposition testimony likewise demonstrates that this lawsuit is entirely driven by her attorneys – indeed, when Ms. Otte was first approached by her attorneys regarding this matter she believed the case was already ongoing.  (Otte Tr. (Ex. D) at 12-13.)  Her testimony

---

[32]   Ms. Otte attempted to correct this testimony based on a conversation she had with her attorney during a break in the depositions.  (Otte Tr. (Ex. D) at 30-32.)  Even after that consultation, however, Ms. Otte could not identify the source of her claim that "defendants didn't do what they said they were going to do."  (Otte Tr. (Ex. D) at 61-63, 66-67.)

repeatedly reflected the fact that she is involved in this lawsuit at the behest of her counsel, and

that she is doing little, if anything, to supervise the litigation:

- "Q.  Ms. Otte, why did you bring this suit?
  A.  I was contacted by my attorney and that's how it started."  (Otte Tr. (Ex. D) at 20.)

- Ms. Otte has made no decisions regarding the lawsuit, and doesn't know if she has the ability to do so.  (Otte Tr. (Ex. D) at 54-55.)

- Ms. Otte could not recall whether she even reviewed the Amended Complaint.  (Otte Tr. (Ex. D) at 120-21.)

- Ms. Otte was not sent a copy of Defendants' requests for production, and made no search for documents after those requests were served.  (Otte Tr. (Ex. D) at 123-24.)

This lack of understanding of her role, taken alone, demands that Ms. Otte's motion to

represent the proposed class be denied.  See Carrier, 2008 WL 312657, at *9-10 (denying class

certification, because, *inter alia*, "[b]ased on [plaintiffs'] deposition testimony, they have little if

any understanding of their role, independent of counsel, as class representatives").

Ms. Otte does not even have knowledge of the facts underlying her personal claim:

- Ms. Otte did not gather the documents produced by her attorneys in the litigation – that task was done by her mother, Thelma Louise Otte.  (Otte Tr. (Ex. D) at 50-54.)[33]  Ms. Otte was unable to identify documents she produced to Defendants.  (Otte. Tr. at 50-51, 68-69, 72-73, 75-79, 100-03, 105-08, 110-14, 116-18.)

- Ms. Otte does not know whether Ms. Reynolds ever called anyone at Defendants or Open Solutions to ask questions about her CIGNAssurance Account.  (Otte Tr. (Ex. D) at 49-50.)

- Ms. Otte does not know whether Ms. Reynolds understood that interest was going to be credited to her CIGNAssurance Account or how that interest was determined.  (Otte Tr. (Ex. D) at 63.)

- Ms. Otte did not know that her mother, on behalf of the estate of Ms. Reynolds had requested that a check be issued closing out the CIGNAssurance Account.  (Otte Tr. (Ex. D) at 83-84, 94-97.)

---

[33]   Ms. Otte stepped in as administratrix of Ms. Reynolds' estate only because Ms. Otte's mother, the original executrix, was unwilling to go forward with this lawsuit.  (Otte Tr. (Ex. D) at 37-38.)  It also bears noting that Ms. Otte has not been diligent regarding her duties to the estate of Ms. Reynolds, and did not review the most recent federal tax return before it was filed.  (Otte Tr. (Ex. D) at 114-15.)

- Ms. Otte does not know why the check issued to Ms. Reynolds' estate was never negotiated, and has issued no instructions to the estate attorneys regarding those funds.  (Otte Tr. (Ex. D) at 89-93.)

Plaintiff's failure to affirmatively establish her adequacy as a class representative, combined with the overwhelming evidence that she has almost no knowledge about the case and has completely abdicated control of the lawsuit to her attorneys, provides a complete and independent basis for denying Plaintiff's motion for class certification.

> **2.    Plaintiff Has Failed To Present Evidence Overcoming The Obvious Conflicts Presented By Her Status As Administratrix Of The Estate Of Ms. Reynolds.**

The Seventh Circuit has observed that there may be an "inherent conflict between an administrator's duty to act for the benefit of beneficiaries and creditors of the estate and the class representative's duty to act for all the class members."  First Interstate Bank v. Chapman & Cutler, 837 F.2d 775, 781 (7th Cir. 1988).  In the face of such conflict, a putative class representative must show that all beneficiaries to the estate consented to pursuit of the litigation. In re FleetBoston Fin. Corp. Sec. Litig., 253 F.R.D. 315, 325 (D.N.J. 2008) (citing First Interstate Bank, 837 F.2d at 781, and Kaplan v. Pomerantz, 131 F.R.D. 118, 123 (N.D. Ill. 1990)).  Additionally, depending on the circumstances, an administrator may need to aver that he or she is willing to cover the costs of litigation personally (as opposed to the estate paying such costs), including any award of attorneys' fees and/or costs.  Id.

Here, Plaintiff's duties as administratrix are plain.  Among other things, Ms. Otte has the duty to close the estate as promptly as possible and to preserve the estate in the interim.  See IND. CODE § 29-1-7.5-3.8 (prompt closing of estates); IND. CODE § 29-1-13-2 ("No executor named in the will shall interfere with the estate entrusted to him further than to preserve the same until the issuing of letters; but, for that purpose, he may prosecute any suit to prevent the loss of any part thereof.").  Yet Plaintiff has not only presented no evidence that the other beneficiaries of Ms. Reynolds' estate have expressly consented to participation in the litigation, but also testified at her deposition that she does not know whether they support pursuing the lawsuit

because she has never discussed it with them.  (Otte Tr. (Ex. D) at 45-46.)  Nor has Ms. Otte

agreed to be personally responsible for costs incurred by the estate in pursuing this action.  As

such, there is no basis for the Court to conclude that the obvious conflict has been resolved.

These inadequacies provide a complete and independent basis for denial of Plaintiff's motion for

class certification.

### C. Plaintiff Has Not Established That Class Certification Under Any Provision Of Rule 23(b) Is Appropriate

#### 1. Rule 23(b)(1) Is Inapplicable Because There Is No Risk Of Prejudice Due To Inconsistent Adjudication.

Plaintiff asserts that no-opt-out, no-notice class certification pursuant to Rule 23(b)(1) is

warranted due to the risk of inconsistent adjudication.  It is not.  Plaintiff cannot establish

prejudice to any party if the putative class members proceed separately against Defendants.

Rule 23(b)(1) has limited application:

> Rule 23(b)(1) covers cases in which separate actions by or against individual class
> members would risk establishing "incompatible standards of conduct for the party
> opposing the class," Fed. Rule Civ. Proc. 23(b)(1)(A), or would "as a practical
> matter be dispositive of the interests" of nonparty class members "or substantially
> impair or impede their ability to protect their interests," Rule 23(b)(1)(B).

Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997).  Neither provision is applicable

here.

#### a. Separate adjudications would not prejudice absent class members within the meaning of Rule 23(b)(1)(B).

Rule 23(b)(1)(B) certification is appropriate only where "the shared character of rights

claimed or relief awarded entails that any individual adjudication by a class member disposes of,

or substantially affects, the interests of absent class members."  Ortiz, 527 U.S. at 834.

Subsection (b)(1)(B) typically applies where the defendants have limited funds, i.e., "aggregating

claims . . . made by numerous persons against a fund insufficient to satisfy all claims."  Id.

(internal quotation marks omitted).  There is no such allegation of limited resources here, so

Plaintiff cannot make use of that justification.  Likewise, it is well settled that "the effect of *stare*

*decisis*, standing alone, will not justify class certification under Rule 23(b)(1)(B)." Tilley v. TJX

Cos., Inc., 345 F.3d 34, 42 (1st Cir. 2003).  Thus, Plaintiff must establish a *dispositive* prejudicial

effect on absent class members if a class is not certified other than the potential influence of a

decision in another individual action.  Plaintiff has not done so.

In an attempt to justify Rule 23(b)(1)(B) no-opt-out certification, Plaintiff lumps all

"ERISA" actions together, asserting that they are particularly well suited for certification

pursuant to Rule 23(b)(1).  In doing so, Plaintiff over generalizes, attempting to cloak her action

for individual monetary damages as similar to ERISA actions that seek a recovery to a common

trust and/or reformation to a contractual plan document that applies equally to all putative class

members.

In many of the cases cited by Plaintiff, at least one of the claims asserted was pursuant to

ERISA Section 502(a)(2) in the plaintiffs' representative capacity on behalf of a plan as a whole.

See Tussey v. ABB, Inc., No. 06-04305-CV-NKL, 2007 WL 4289694, at *3  (W.D. Mo. Dec. 3,

2007); Kanawi v. Bechtel Corp., 254 F.R.D. 102, 106 (N.D. Cal. 2008); In re Global Crossing

Sec. & ERISA Litig., 225 F.R.D. 436, 452 (S.D.N.Y. 2004); Becher v. Long Island Lighting Co.,

164 F.R.D. 144, 150 (E.D.N.Y. 1996).  In this case, by contrast, Plaintiff did *not* bring suit under

ERISA Section 502(a)(2) on behalf of the plans, and, indeed, she seeks a recovery to herself.

The very block quote selected by Plaintiff is instructive:

> Generally, an action "charging a 'breach of trust by an indenture trustee or other
> fiduciary similarly affecting the members of a large class' of beneficiaries,
> requiring an accounting or similar procedure 'to restore the subject of the trust'"
> is a classic example of the type of case appropriate for certification under Rule
> 23(b)(1)(B).  Not surprisingly, therefore . . . breach of fiduciary duty claims
> brought under [ERISA] §502(a)(2) are paradigmatic examples of claims
> appropriate for certification as a Rule 23(b)(1) class.

(Pl.'s Br. at 18, quoting Hochstadt v. Boston Scientific Corp., No. 08-12139-PDW, 2010 WL

1704003, at *7 (D. Mass. Apr. 27, 2010) (omitting citation)).  But here, Plaintiff is *not* seeking to

return assets to any plan or "restore the subject of a trust"; instead, she seeks direct recovery for

herself and other putative class members.  Those cases therefore provide no support for Rule 23(b)(1) certification.

The remaining cases cited by Plaintiff are ready distinguishable, as unique circumstances were presented – not analogous to those presented here – which the court found established a risk of dispositive prejudice.  See In re Citigroup Pension Plan ERISA Litig., 241 F.R.D. 172, 174 (S.D.N.Y. 2006) (remedy sought was plan reformation that would affect all plan participants equally); Thomas v. SmithKline Beecham Corp., 201 F.R.D. 386 (E.D. Pa. 2001) (certifying class of employees who were originally designated agency temporary employees but who were later hired by employer as full-time active employees who sought injunctive relief forcing employer to apply common definition of "employee" retroactively to determine dates of employment for purpose of employee benefit plans).[34]

In contrast to the ERISA cases seeking a remedy of common interest to all absent class members as participants and beneficiaries in common ERISA plans, here Plaintiff is seeking a purely monetary remedy on behalf of a putative class that implicates thousands of different plan documents with different plan provisions and Rule 23(b)(1)(B) certification is entirely inappropriate.  Whether the beneficiary of a Quest Diagnostics plan wins or loses, for example, has no impact on whether Plaintiff wins or loses based on the applicable Cummins SPD with its different payment provisions, as the Faber decision makes clear in this precise factual setting. See Faber, 2009 WL 3415369, at *7 n.7.  Indeed, even the persuasive value of any previous decisions would be substantially limited where there are material differences between the applicable SPDs and/or the applicable statute of limitations.[35]

_____

[34]   Likewise, Sessions v. Owens-Illinois, Inc., upon which Plaintiff relies, involved a group of participants in the *same plan* challenging the plan administrator's interpretation of a particular plan provision, 267 F.R.D. 171, 179 (M.D. Pa. 2010).  The facts here are very different, and Plaintiff's claim of potential prejudice amounts to nothing more than *stare decisis*.  See Tilley, 345 F.3d at 42 ("[T]he effect of *stare decisis*, standing alone, will not justify class certification under Rule 23(b)(1)(B).").

[35]   Cf.  Crosby v. City of Gastonia, 3:06CV462, 2008 WL 1944399, at *5 (W.D.N.C. May 1, 2008) (denying Rule 23(b)(1)B) certification because, *inter alia*, "each plaintiff can distinguish his particular case on the facts"); Dobson v. Hartford Life & Accident Ins. Co., No. 99cv2256, 2006

As Plaintiff has established no potential dispositive prejudice to absent class members, her motion for certification pursuant to Rule 23(b)(1)(B) should be denied.

> b.      Separate adjudications would not prejudice the Defendants within the meaning of Rule 23(b)(1)(A).

Plaintiff cannot establish that separate adjudications would risk establishing "incompatible standards of conduct" for Defendants. See Fed. R. Civ. P. 23(b)(1)(A). Rule 23(b)(1)(A) is satisfied "only if the hypothetical inconsistent judgments would place the party opposing the class in the position of being unable to comply with one judgment without violating the terms of another." MOORE'S FED. PRAC. § 23.41[3][a]. That standard is not met when the class seeks money, as is the case here. Simply put, "paying one claimant is not inconsistent with not paying another claimant." McBirney v. Autrey, 106 F.R.D. 240 (N.D. Tex. 1985), cited with approval in Kent v. SunAmerica Life Ins. Co., 190 F.R.D. 271, 281 (D. Mass. 2000).[36]

---

WL 861021, at *7 (D. Conn. Mar. 31, 2006) (denying Rule 23(b)(1)(B) certification because ". . . a declaration . . . concerning [Plaintiff's individual action] would not create a risk of impeding the individual interests or actions of putative class members" because of, inter alia, factual differences between the claims), aff'd by Dobson v. Hartford Fin. Servs. Group, Inc., 342 F. App'x 706 (2d Cir. 2009) (unpublished); Huegel v. City of Easton, CIV.A. 00-CV-5077, 2002 WL 32348320, at *5 (E.D. Pa. Oct. 23, 2002) (holding Rule 23(b)(1)(B) certification inappropriate where plaintiffs' claims were based on unique facts because "[e]ach potential class member must be afforded the opportunity to raise an independent, fact-driven claim. In turn, the individualized nature of the claims are not dispositive of subsequent cases."). As noted above, of course, the potential persuasive value of individual adjudications does not support Rule 23(b)(1)(B) certification in the First Circuit. See Tilley, 345 F.3d at 42.

[36]      See also Zinser v. Acufix Research Inst., Inc., 253 F.3d 1180, 1193 (9th Cir. 2001) ("Rule 23(b)(1)(A) certification requires more, however, than a risk that separate judgments would oblige the opposing party to pay damages to some class members but not to others or to pay them different amounts. Certification under 23(b)(1)(A) is therefore not appropriate in an action for damages." (citation and internal quotations and ellipses omitted)); Hochstadt v. Boston Scientific Corp., No. 08-12139-DPW, 2010 WL 1704003, at *12 n.11 (D. Mass. Apr. 27, 2010) (certifying a settlement class in an action brought on behalf of an ERISA-governed plan pursuant to ERISA Section 502(a) under Rule 23(b)(1)(B), but also holding that certification of even a settlement class under 23(b)(1)(B) is improper where monetary relief is requested); Huegel, 2002 WL 32348320, at *5 ("The fact that some of the plaintiffs may prevail against the defendants in individual actions and some of the plaintiffs may not prevail is insufficient grounds to invoke Rule 23(b)(1)(A). . . . Rule 23(b)(1)(A) is not meant to apply where the risk of inconsistent results in individual actions is merely the possibility that the defendants will pay damages to some claimants but not to others." (citations and internal quotations omitted)).

Likewise, the "possible precedential effect of individual actions does not justify certification under Rule 23(b)(1)(A)." Pettrey v. Enter. Title Agency, Inc., 241 F.R.D. 268, 282 (N.D. Ohio 2006) (citing Bacon v. Honda of Am. Mfg., Inc., 205 F.R.D. 466, 483 (S.D. Ohio 2001), aff'd, 370 F.3d 565 (6th Cir. 2004)).

Plaintiff's generalizations about the certifiability of ERISA actions under Rule 23(b)(1), discussed above, are equally inapposite to Rule 23(b)(1)(A) because the often-referenced justification for certifying an ERISA class action pursuant to Rule 23(b)(1) is that a "[f]ailure to certify the class could result in multiple suits *regarding the trustees' interpretation of the [plan]*." Becher, 164 F.R.D. at 153 (emphasis added). Here, Plaintiff is attempting to represent beneficiaries of a multitude of plans with different relevant plan language.[37] Class certification under Rule 23(b)(1)(A) should be denied.

## 2. Rule 23(b)(2) Is Inapplicable Because Plaintiff Is Not Seeking Predominantly Injunctive Relief.

Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." "[T]he forms of relief available in Rule 23(b)(2) class actions are in the nature of group remedies that benefit the entire class." Heffner v. Blue Cross & Blue Shield of Ala., Inc., 443 F.3d 1330, 1345 (11th Cir. 2006). "If a class is certified under Rule 23(b)(2), there is no option for class members to opt out of the class, on the presumption that because the plaintiffs seek class-wide

---

[37] Even in the context of a single plan, this reasoning should, however, be rejected. If such reasoning were carried to its logical conclusion, all claims touching upon the interpretation of plan terms would necessarily need to be brought as class actions on behalf of all participants and beneficiaries in the relevant plan. That would be untenable. Individual claims under ERISA that turn on the application of plan terms, such as individual actions for denied disability benefits, are frequently brought in federal court without fear that an individual's action will be dispositive of the interests of every other member of such plan. In this respect, the risk of multiple plan interpretations is no different than the risk of multiple statutory interpretations, and such a risk cannot support class certification. See Taylor v. CSX Transp., Inc., 264 F.R.D. 281, 293 (N.D. Ohio 2007) ("while the Court recognizes Plaintiffs' concerns that multiple statutory interpretations may result from individual adjudications, any inconsistent theories of law applied by trial courts . . . would be reviewed by appellate courts").

injunctive relief, the interests of class members are 'cohesive and homogeneous.'" <u>Gesell v. Commonwealth Edison Co.</u>, 216 F.R.D. 616, 626 (C.D. Ill. 2003) (quoting <u>Lemon v. Int'l Union Operating Eng'rs Local</u>, 216 F.3d 577, 580 (7th Cir. 2000)).

Here, Plaintiff cannot articulate any injunctive or declaratory relief applicable to the putative class as a whole because of the significant distinctions among members of the putative class, particularly with regard to those subject to different plan provisions and those outside ERISA's three-year statute of limitations.[38]  Indeed, Plaintiff has no interest in any injunctive or declaratory relief herself because Ms. Reynolds' estate requested and received a check closing out her account before this lawsuit was filed.  Additionally, the First Circuit has strictly limited the circumstances under which monetary damages may be sought in an action certified under Rule 23(b)(2).  Those circumstances are not present here.

a.      Plaintiff is seeking solely monetary relief.

"Rule 23(b)(2) certification is not appropriate when money damages are the predominant relief that the plaintiffs seek." <u>DeRosa</u>, 694 F. Supp. 2d at 95 (citing <u>Allison v. Citgo Petroleum Corp.</u>, 151 F.3d 402, 415 (5th Cir. 1998).  <u>See also</u> <u>Markarian v. Conn. Mut. Life Ins. Co.</u>, 202 F.R.D. 60, 70 (D. Mass. 2001) (if it is "'readily apparent . . . that [plaintiffs'] primary objective is money damages[,]' certification under Rule 23(b)(2) is not appropriate" (quoting <u>Rothwell v. Chubb Life Ins. Co.</u>, 191 F.R.D. 25, 29 (D.N.H. 1998))).  "[M]onetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive relief. . . .  By incidental, we mean damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief.'" <u>DeRosa</u>, 694 F. Supp. 2d at 103-04 (quoting <u>Allison</u>, 151 F.3d at 415 (emphasis in original)).[39]

Here, not only does monetary relief predominate, Plaintiff is not truly seeking *any* injunctive relief on her own behalf, let alone on behalf of the proposed class as a whole.  Indeed,

---

[38]   <u>See</u> <u>supra</u> at 15-25, and <u>infra</u> at 40-43.

[39]   The <u>Allison</u> approach is generally followed by courts within the circuit.  <u>See</u> <u>DeRosa</u>, 694 F. Supp. 2d at 104.

nowhere has Plaintiff articulated a single particularized injunction she is seeking.  Instead, she simply references, broadly, "injunctive relief enjoining Defendants' violations of ERISA."  (Am. Compl. at WHEREFORE paragraph d.)  Such boilerplate language is insufficient to support the issuance of an injunction under Federal Rule of Civil Procedure 65(d), and cannot therefore justify Rule 23(b)(2) class certification.  See Shook v. Bd. of County Comm'rs of El Paso, 543 F.3d 597, 604 (10th Cir. 2008) (for Rule 23(b)(2) certification, plaintiff must establish that "any classwide injunctive relief can satisfy the limitations of [Rule] 65(d)-namely, the requirement that it 'state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required.'" (citations omitted)).

Moreover, to the extent Plaintiff is seeking an injunction stopping Defendants from using the CIGNAssurance Account method of payment for future claims and/or to close current accounts, Plaintiff's motion fails because she would not benefit from such prospective relief and has no interest in it.  Ms. Reynolds' estate requested and received a check closing her account before this lawsuit was filed, and it has not been established that the estate is likely to be the beneficiary of a policy issued by Defendants.

In DeRosa, this Court held that the plaintiff, who was asserting a discrimination claim against a former employer, was "an inadequate representative for a putative class seeking certification under Rule 23(b)(2) because an injunction is the primary relief requested and, because she would not benefit from such relief, she may not ardently advocate for it."  694 F. Supp. 2d at 102.  See also Drayton v. W. Auto Supply Co., No. 01-10415, 2002 WL 32508918, at *4-5 (11th Cir. Mar. 11, 2002) (per curium) (finding former employees had not established "a real and imminent threat of future discrimination" and therefore had no standing to seek injunctive relief on behalf of a class under Rule 23(b)(2)), cited with approval in DeRosa, 694 F. Supp. 2d at 102.

Indeed, this Court recently rejected Rule 23(b)(2) certification in the Mogel RAA case because:

> As explained above, absent the prospect of monetary recovery, the named
> plaintiffs and class members have no incentive to pursue their claims. Any harm
> suffered as a result of UNUM's alleged violations of ERISA has already occurred,
> and no class members are likely to face further harm in the absence of injunctive
> or declaratory relief. Because this Court finds that reasonable plaintiffs would not
> bring this suit only to obtain the injunctive and declaratory relief sought, it
> concludes that monetary relief is Plaintiffs' primary objective and certification
> under Rule 23(b)(2) is unwarranted.

Mogel v. UNUM Life Ins. Co. of Am., 646 F. Supp. 2d 177, 184 (D. Mass. 2009) (Mogel II).[40]

See also Bolin v. Sears, Roebuck & Co., 231 F.3d 970, 978 (5th Cir. 2000) (certification under

Rule 23(b)(2) was inappropriate because "[m]ost of the class consists of individuals who do not

face further harm . . . . These plaintiffs have nothing to gain from an injunction, and the

declaratory relief they seek serves only to facilitate the award of damages."), quoted with

approval in Mogel II, 646 F. Supp. 2d at 184; DeRosa, 694 F. Supp. 2d at 105 (holding

requirements of Rule 23(b)(2) not satisfied where "[Plaintiff] quit [her employment] in the wake

of two failed drug-screenings and a serious safety violation. Therefore, she would benefit only

from monetary relief because she is not seeking promotion any longer."); Jimenez v. Domino's

Pizza, Inc., 238 F.R.D. 241, 250 (C.D. Cal. 2006) (denying certification under Rule 23(b)(2)

because monetary relief predominated over the request for injunctive relief where plaintiffs

pursuing claim for overtime wages were "former employees and thus an injunction as to

[defendants'] behavior to current employees cannot be Plaintiffs' primary concern").

> b. Plaintiff's characterization of monetary relief as "equitable" does
> not transform it into injunctive relief supporting Rule 23(b)(2)
> certification.

Plaintiff attempts to save her bid for Rule 23(b)(2) certification by asserting that, because

the monetary relief sought is allegedly "equitable" under ERISA Section 502(a)(2), 29 U.S.C §

1132(a)(3), Rule 23(b)(2) certification is appropriate.  (Pl.'s Mem. at 21.)  Plaintiff is wrong.

---

[40]    While Mogel is similar in many respects, it should be noted that many of the arguments asserted by
Defendants here regarding Rule 23(a)'s requirements do not appear to have been raised by the
defendant in that case.

The distinction in Rule 23(b)(2) is not between "equitable" and "legal" relief, but rather between injunctive and monetary relief.  Regardless of whether the money she seeks is an "equitable" remedy under ERISA Section 502(a)(3),[41] there is no injunctive or declaratory relief sought.

Moreover, courts have repeatedly held that "the characterization of monetary relief as 'equitable' does not foreclose the predominance inquiry" under Rule 23(b)(2).  Mogel II, 646 F. Supp. 2d at 183 (citing In re Monumental Life, 365 F.3d 408, 418 (5th Cir. 2004) for the proposition that "rather than decide whether plaintiffs' claim for restitution is legal or equitable in nature, we apply Allison and examine whether the claim predominates over the request for injunctive relief").

As the Court in Mogel II explained, "Courts in other jurisdictions also engage in the predominance inquiry regardless of how the monetary relief is characterized."  646 F. Supp. 2d at 183 (collecting cases).  The Fourth Circuit has directly considered and rejected Plaintiff's argument:

> The text of Rule 23(b)(2) says nothing whatsoever about equitable relief, but authorizes class treatment only when the plaintiff seeks predominantly "injunctive" or "declaratory" relief. "[W]hen the terms of a statute are clear and unambiguous, [as they are here,] our inquiry ends and we should stick to our duty of enforcing the terms of the statute as Congress has drafted it." Sigmon Coal Co. v. Apfel, 226 F.3d 291, 305 (4th Cir. 2000) (citations and internal quotation marks omitted) . . . . To be sure, injunctive and declaratory relief are equitable remedies. *But if the Rule's drafters had intended the Rule to extend to all forms of equitable relief, the text of the Rule would say so.* See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993) (applying the maxim *expressio unius est exclusio alterius* to the Federal Rules of Civil Procedure). *We therefore hold that certification under Rule 23(b)(2) is improper when the predominant relief sought is not injunctive or declaratory, even if the relief is equitable in nature.* Because Appellants' injunction request is illusory, their prayer for injunctive relief cannot predominate over their prayer for non-injunctive, non-declaratory equitable relief under any reasonable interpretation of Rule 23(b)(2).

---

[41]   Although the Court need not consider the issue now, it bears noting that the monetary relief sought by Plaintiff is not properly considered "equitable" under ERISA Section 502(a)(3) and the Supreme Court's holding in Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204 (2002).

<u>Thorn</u>, 445 F.3d at 331 (emphasis added).  <u>See also</u> <u>Owner-Operator Indep. Drivers Ass'n, Inc.</u>
<u>v. New Prime, Inc.</u>, 213 F.R.D. 537, 545 (W.D. Mo. 2002) (denying certification and holding
that "even characterized as disgorgement, the relief sought by Plaintiffs is not relief
contemplated by Rule 23(b)(2)"), <u>aff'd</u>, 339 F.3d 1001, 1011-12 (8th Cir. 2003) ("Because
Appellants seek predominantly monetary relief, we agree with the district court that the
applicable provision [is Rule 23(b)(3)].").

  <u>Haddock v. Nationwide Fin. Servs., Inc.</u>, 262 F.R.D. 97 (D. Conn. 2009), relied upon
heavily by Plaintiff (Pl.'s Mem. at 23-24), is not to the contrary.  As the <u>Haddock</u> court
discussed, the monetary relief sought in that case was sought on behalf of ERISA-governed plans
pursuant to ERISA Sections 409 and 502(a)(2), and the court relied on that fact in its reasoning
in support of Rule 23(b)(2) certification. 262 F.R.D. at 126-27 (rejecting defendants' arguments
grounded in caselaw arising pursuant to claims under ERISA Section 502(a)(3), noting that
"plaintiffs here are seeking relief on behalf of their Plans, not individual relief").  Additionally,
although the <u>Haddock</u> court closely analyzed the nature of the monetary relief, it also clearly
held that injunctive relief predominated on the grounds that, although some (but not all) of the
plan trustees seeking to be named as proposed class representatives were seeking primarily
monetary relief because they no longer had an ongoing contractual relationship with defendant,
the "primary thrust of the Trustee's case is to stop Nationwide from continuing to engage in
conduct that is in breach of its fiduciary obligations."  <u>Haddock</u>, 262 F.R.D. at 127 n.19.

  In sum, because Plaintiff has proposed no specific injunctive relief, is not seeking any
recovery inuring to an employee benefit plan's trust and, indeed, would lack standing to pursue
such relief, Plaintiff's bid for class certification pursuant to Rule 23(b)(2) must be denied.

  **3.**  **Rule 23(b)(3) Is Inapplicable Because Plaintiff Has Failed To
Establish Predominance And Superiority.**

  To certify a class under Rule 23(b)(3), a Plaintiff must establish:

"that the questions of law or fact common to class members predominate over any
questions affecting only individual members" ("predominance"), and that "a class

action is superior to other available methods for fairly and efficiently adjudicating the controversy" ("superiority").

New Motor Vehicles, 522 F.3d at 18-19 (citing Fed. R. Civ. P. 23(b)(3)). "In classes certified under Rule 23(b)(3), the Rules 'invite[ ] a close look at the case before it is accepted as a class action.'" Id. (quoting Amchem, 521 U.S. at 615 (additional quotation omitted)). Plaintiff has not met her burden.

>   a.   Plaintiff has not established that common issues would
>        predominate if her proposed class is certified.

The predominance inquiry is significantly more demanding than the Rule 23(a) tests:

> While the mere existence of some common issues may satisfy the commonality requirement of Rule 23(a), it is not sufficient to satisfy the requirements of Rule 23(b)(3). Subsection (b)(3) requires that the common issues "predominate" over the issues unique to individual class members, and that a class action be superior to any other method of adjudication. The predominance requirement of Rule 23(b)(3) is more stringent than the commonality requirement of Rule 23(a).

Van West, 199 F.R.D. at 453; see also Maldonado v. Ochsner Clinic Found., 493 F.3d 521, 525 (5th Cir. 2007) ("The predominance inquiry is more demanding than the commonality requirement of Rule 23(a) and requires courts to consider how a trial on the merits would be conducted if a class were certified." (citation and internal quotations omitted)); New Motor Vehicles, 522 F.3d at 20 ("'[T]he predominance criterion is far more demanding' . . . than the commonality requirement." (quoting Amchem, 521 U.S. at 624)).

"The Rule 23(b)(3) predominance inquiry tests whether the class is sufficiently cohesive to warrant adjudication by representation, and mandates that it is far more demanding than the Rule 23(a)(2) commonality requirement." Van West, 199 F.R.D. at 453 (quoting In re LifeUSA Holding Inc., 242 F.3d 136, 144 (3d Cir. 2001)).[42]

---

[42]   See also Thorn, 445 F.3d at 319 ("The predominance requirement tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." (internal quotations omitted)); Unger v. Amedisys Inc., 401 F.3d 316, 320 (5th Cir. 2005) (predominance, "although reminiscent of the commonality requirement of Rule 23(a), is 'far more demanding' because it 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation'" (quoting Amchem, 521 U.S. at 623-24)).

Additionally, "[u]nder the predominance inquiry, 'a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.'" New Motor Vehicles, 522 F.3d at 20 (quoting Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 298 (1st Cir. 2000)).  Nevertheless, "there is some overlap among the certification criteria of commonality . . . typicality . . . and predominance." New Motor Vehicles, 522 F.3d at 19 (noting that the court below had correctly stated that "if the proof of impact is not common across the class, then not only is the named plaintiffs' claim of injury not typical, but the predominance assessment is also affected" (citation omitted)).  See also Amchem, 521 U.S. at 623 n.18 (predominance and typicality are similar in some respects).  Thus, all of the variances discussed above regarding typicality are even more significant with regard to the predominance inquiry.  (See supra at 12-25.)

Furthermore, even if a class representative could be found for those outside the three-year limitations period, individualized inquiries necessary for application of the "actual knowledge" standard precludes a finding of predominance.  Defendants are entitled to discovery, including depositions, from each putative class member regarding whether and when he or she had actual knowledge of the breaches to determine whether that individual's claim is timely.  Likewise, Defendants are entitled to present evidence at trial regarding each putative class member's actual knowledge.  These inquiries into each individual's state of mind are highly individualized and would overwhelm any discovery and trial presentation regarding common issues.  See West v. AK Steel Corp. Ret. Accumulation Pension Plan, No. 1:02 CV 0001, 2005 WL 1745491 at *4 (S.D. Ohio July 25, 2005) (excluding plan participants who executed releases from the class definition because issues relating to whether the releases were "knowing and voluntary" "[o]bviously . . . demand individualized factual review"); Rivera v. Am. Home Prods. Corp., 191 F.R.D. 45, 48 (D.P.R. 1999) (denying motion for class certification where individualized inquiries would be required regarding putative class members' states of mind because "[t]he reasonableness of each employee's understanding of the terms contained in the retirement plan cannot be ascertained across the board").

While the First Circuit has rejected a per se rule treating such issues as an automatic disqualifier, "a necessity for individualized statute-of-limitations determinations invariably weighs against class certification under Rule 23(b)(3)." Mowbray, 208 F.3d at 296. As the First Circuit has explained, although "[c]ourts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses *may* be available against individual members," where evidence "shows that an affirmative defense is likely to bar claims against at least some class members," then a court should create subclasses, if appropriate, or exclude individuals potentially subject to the defenses. Smilow, 323 F.3d at 39-40 (emphasis added). Here, the "actual knowledge" standard that will determine whether individuals are subject to a three-year statute of limitations requires an individualized factual inquiry.

Unlike more common "constructive knowledge" standards, actual knowledge by each individual must be established and cannot be imputed. See Edes, 417 F.3d at 141 ("actual knowledge must be distinguished from constructive knowledge in applying ERISA § 413" (citation and internal quotations omitted)). See also Merck & Co. v. Reynolds, 130 S. Ct. 1784, 1795 (2010) (distinguishing between the "actual knowledge" standard set forth in Section 413 and the term "discovery," which the Court held encompasses both what the individual knows and what he or she "with due diligence should know").[43] Under such circumstances, certification pursuant to Rule 23(b)(3) is inappropriate. See Thorn, 445 F.3d at 325-27 (affirming denial of class certification because "[e]xamination of whether a particular plaintiff possessed sufficient information such that he knew or should have known about his cause of action will generally require individual examination of testimony from each particular plaintiff to determine what he knew and when he knew it" for statute of limitations purposes[44]).[45]

---

[43]   The DOL recently filed a brief as amicus curiae asserting that the three-year statute of limitations can be triggered solely by the plaintiffs' actual knowledge of the breach, and actual knowledge of others cannot be imputed to participants or beneficiaries. Fish v. Greatbank Trust Co., No. 09-cv-1668 (D. Ill.) Brief for the Secretary of Labor as Amicus Curiae in Support of Plaintiffs' Opposition to Defendants' Joint Motion for Summary Judgment (copy attached as Ex. QQ).

[44]   In Thorn, the Fourth Circuit distinguished the Fifth Circuit's decision in In re Monumental, 365 F.3d 408, on the grounds that the In re Monumental court held only that a statute-of-limitations defense

Similarly, the other variances among putative class members discussed above as precluding a finding of typicality also demonstrate individualized inquiries defeating predominance.  The applicability of different SPDs will require separate factual inquiries and, where terms are ambiguous, discovery into the intent of the contracting party – the plan sponsor.[46]  Although such inquiries might be common to plan-based classes limited to individual governing SPDs, in the proposed class they would dwarf common issues.  Finally, individual depositions will be necessary to determine which beneficiaries took advantage of the ancillary benefits associated with the RAA program because the value of those benefits must be considered in evaluating whether CIGNA earned a "profit" from that beneficiary's RAA assets.

> **b.**    Plaintiff has not established that her proposed class is superior to all other methods of adjudication.

Rule 23(b)(3) "requires that a class action be superior to any other available method of adjudication."  Van West, 199 F.R.D. at 453.  "This provision is intended to permit class actions

---

based on *constructive* knowledge could be decided on a classwide basis.  Thorn, 445 F.3d at 326.  Here, as in Thorn, the defense requires *actual* knowledge and therefore requires individualized inquiry and evidence.

[45]   See also Vega, 564 F.3d at 1274 (holding certification of class for breach of contract and unjust enrichment claims was an abuse of discretion because common issues did not predominate where, *inter alia*, defendant "would proffer individualized and varying evidence to defend against claims of individual class members by showing what they knew or should have known" about a disputed compensation practice); Perez v. First Am. Title Ins. Co., No. CV-08-1184-PHX-DGC, 2010 WL 1507012, at *7 (D. Ariz. Apr. 14, 2010) (excluding individuals whose claims arose before the applicable statute of limitations "[b]ecause [in order to apply the tolling doctrine] a person-by-person inquiry would be necessary to determine whether class members whose claims arose before the limitations period are entitled to the benefit of the discovery rule, individual issues would predominate" (collecting cases)); Stand Energy Corp. v. Columbia Gas Transmission Corp., No. 2:04-0867, 2008 WL 3891219, at *21 (S.D. W. Va. Aug. 19, 2008) (holding predominance requirement not satisfied where application of tolling of statute of limitations doctrine would require the court "to determine which plaintiffs had information about [relevant] transactions prior to 2000 . . . [and] . . . to look at each plaintiff to determine what actions it took to satisfy the due diligence requirement of equitable tolling–what it knew and the level of due diligence exercised. These factors require individual inquiry and are not subject to class-wide proof").

[46]   See, e.g. Pop's Pancakes, Inc. v. NuCO2, Inc., 251 F.R.D. 677, 687 (S.D. Fla. 2008) (finding plaintiffs failed to establish predominance for a breach of contract claim where putative class members have varying contracts and "an individual inquiry would necessarily have to be conducted to determine whether a breach of contract had occurred based upon each contract.")

that would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Id. at 454 (citation and internal quotations omitted).  Here, the superiority requirement is not established because classes should be certified, if at all, on a plan-by-plan (or governing-SPD-by-governing-SPD) basis.

Each plan that provided life insurance to employees of the plan sponsor has individualized interests at stake with regard to the claims of its beneficiaries in this suit.  As reflected in the sampling of SPDs, it is apparent that at least some of the plans were not only aware of the CIGNAssurance Program, but also took specific steps to inform their participants of its features.  (See supra at 15-17.)  Plaintiff here has proposed an unnecessarily enormous and unwieldy class.  Plan-by-plan certification would be economically feasible and protect the rights of individual beneficiaries.  Additionally, to the extent multiple plan-based class actions were pending simultaneously, the cases could be consolidated for discovery purposes, achieving significant economies of scale.  Finally, the availability of attorneys' fees under ERISA Section 502(g) weighs against a finding of superiority.[47]

Plaintiff cannot simply gloss over these problems with her bid to certify a class under Rule 23(b)(3), or provide bland reassurances that predominance and superiority concerns will be worked out as necessary.  "Given the plaintiffs' burden, a court cannot rely on assurances of counsel that any problems with predominance or superiority can be overcome."  Castano v. Am. Tobacco Co., 84 F.3d 734, 742 (5th Cir. 1996).  Plaintiff's motion should therefore be denied.

---

[47]   See Reeb v. Ohio Dep't of Rehab. & Corr., 435 F.3d 639, 651 (6th Cir. 2006) (denying certification, noting that Title VII provides a fee-shifting provision, and that there is "no lack of individual plaintiffs lining up to bring Title VII actions, as any cursory search on Lexis-Nexis or Westlaw will illustrate"); Allison, 151 F.3d at 420 (substantial value of claims and "the availability of attorneys' fees eliminate financial barriers that might make individual lawsuits unlikely or infeasible").  ERISA, like Title VII, contains a fee-shifting provision.  See ERISA § 502(g), 29 U.S.C. § 1132(g).  A cursory search of LexisNexis or Westlaw will reveal no shortage of individual plaintiffs bringing suit under ERISA.

IV.    **CONCLUSION**

For each and all of the foregoing reasons, Plaintiff's Motion for Class Certification should be denied.

Respectfully submitted,

LIFE INS. CO. OF NORTH AMERICA and
CONNECTICUT GENERAL LIFE INSURANCE
By Their Attorneys,

September 3, 2010

*/s/ Jeffrey W. Moss*
Jeffrey W. Moss (MA BBO# 552421)
Morgan, Lewis & Bockius LLP
225 Franklin Street, 16th Floor
Boston, MA 02110
Telephone:  617.341.7700
Facsimile:  617.341.7701
Email: jmoss@morganlewis.com

Jeremy P. Blumenfeld (*Pro Hac Vice*)
Victoria L. Gorokhovich (*Pro Hac Vice*)
Kasturi Sen (*Pro Hac Vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:  215.963.5000
Facsimile:  215.963.5001
Emails:  jblumenfeld@morganlewis.com
           vgorokhovich@morganlewis.com
           ksen@morganlewis.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was served on the following counsel of record on September 3, 2010 via the Court's ECF system:

Stuart T. Rossmann, Esquire
Charles M. Delbaum, Esquire
The National Consumer Law Center
7 Winthrop Square, 4th Floor
Boston, Massachusetts  02110
srossman@nclc.org
cdelbaum@nclc.org


John C. Bell, Jr., Esquire
Leroy W. Brigham, Esquire
Bell & Brigham
Post Office Box 1547
Augusta, Georgia  30903-1547
john@bellbrigham.com
lee@bellbrigham.com


Jeffrey G. Casurella, Esquire
LAW OFFICES OF JEFFREY G. CASURELLA
400 Interstate N. Pkwy. Suite 310
Atlanta, GA 30339
jeff@jgclawoffices.com


Helen Cleveland, Esquire
CLEVELAND GAMBLE GILBREATH LLC
Resurgens Plaza, Suite 2270
945 East Paces Ferry Road
Atlanta, GA 30326
hcleveland@cgglegal.com


M. Scott Barrett, Esquire
Barrett & Associates
320 W. 8th St., Suite 100
P.O. Box 5233
Bloomington, Indiana  47407-5233
MSB4664@aol.com

Joseph K. Markel, Esquire
Ronald K. Lambring, Esquire
Jennifer Markel, Esquire
Markel Markel & Lambring
136 South Main Street
P.O. Box 121
Brownstown, Indiana  47220
jlmarkel@markellaw.com


Cary L. Flitter, Esquire
Lundy Flitter & Beldecos, PC
450 North Narberth
Narberth, Pennsylvania  19072
cflitter@lfbb.com


*/s/ Jeffrey W. Moss*
*Attorney for All Defendants*