IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BRENDA J. OTTE, *et al*,<br><br>    Plaintiffs,<br><br>    v.<br><br><br><br>LIFE INSURANCE COMPANY OF<br>NORTH AMERICA, *et al.*,<br><br>    Defendants. | CASE NO.   09-11537-RGS<br><br>**LEAVE TO FILE GRANTED ON<br>FEBRUARY 22, 2011** |

**NOTICE OF SUPPLEMENTAL AUTHORITY IN OPPOSITION
TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Defendants, by and through their counsel, hereby submit as Notice of Supplemental

Authority the Department of Labor's *amicus* brief in *Faber v. Met. Life Ins. Co.* Case No. 09-

4901, currently before the Second Circuit.  The Department of Labor's *amicus* brief confirms

that Plaintiff's claims in this case requires a "factual inquiry into the parties' representations and

understandings" and a separate, plan-by-plan analysis of each plan and/or summary plan

description at issue, thus precluding class treatment.  This is relevant to Defendants' argument at

pages 13-19, 32-34 and 43-44 of their Opposition to Plaintiff's Motion for Class Certification,

Dkt. No. 39.  A copy of the Department of Labor's *amicus* brief is attached as Exhibit 1.

In *Faber*, the Second Circuit has pending before it virtually identical claims to those

alleged in this case, brought by the same lawyers, challenging the use of a Retained Asset

Account ("RAA") to pay life insurance benefits.  *See Faber v. Met. Life Ins.*, No. 08-10588,

2009 WL 3415369 (S.D.N.Y. Oct. 23, 2009) (describing the facts of the case).[1]  After oral

argument, the Second Circuit asked the Department of Labor to file an *amicus* brief addressing

specific issues about the propriety of using RAAs to pay life insurance benefits due under

ERISA plans – issues uniquely within the Department's expertise and experience, including:

"does MetLife discharge its ERISA fiduciary duty by establishing a beneficiary's [RAA], and []

to what extent does MetLife retain a beneficiary's benefits when it establishes a beneficiary's

[RAA.]"  Amicus Brf. at 1.

In answering these questions and interpreting ERISA's statutory and regulatory

provisions, the Department of Labor specifically rejected Plaintiff's argument in this case that

payment of life insurance through an RAA account always constitutes a prohibited transaction

and breach of fiduciary duty regardless of the plan terms.  *Id.* at 13.  Instead, the Department of

Labor stated that whether an insurance company satisfies – or breaches – its fiduciary duties or

engages in a prohibited transaction by paying via an RAA depends on the specific terms of the

plan at issue and requires a "factual inquiry into the parties' representations and understandings."

*See id.* at 10-12.  Importantly, because the summary plan descriptions at issue in *Faber* provided

for payment via RAA, the Department of Labor concluded that there was no fiduciary breach or

prohibited transaction in that case.  *See id.* at 5-6.

The Department of Labor explained:

- "[P]lan sponsors GM and Kodak[2] were free under ERISA to structure the Plans to
  provide life insurance benefits through cash payments or in the forms of [RAAs]
  – ERISA does not dictate a particular choice.  Similarly, the Plans' ownership
  rights, if any, in assets held by MetLife are determined *by the specific choices*

---

[1]   *See also* Defs.' Opposition Brf. at 14-15.

[2]   The plaintiffs in *Faber* were beneficiaries in plans sponsored by GM and Kodak, respectively.
      Plaintiff in this case was a beneficiary in a plan sponsored by Cummins, Inc.

*reflected in the plan documents and contractual arrangements between the parties.*" *Id.* at 9 (emphasis added).

- "Nothing *in the SPDs or Customer Agreements* cited above gives the GM or Kodak Plans or participants and beneficiaries an ownership interest in MetLife's assets or convey title to any such assets. . . . Instead, *because each Plan promised its benefits in the form of a [RAA]*, the Plan's stated purpose is discharged once the account is created and the beneficiary is given control over his account. . . . The relationship between MetLife and the individual account holder is now governed by the Customer Agreement defining their contractual relationship under state law, not by a fiduciary relationship established in the plan documents under ERISA. . . . After the creation of the [RAA], ERISA no longer governs the relationship between MetLife and the [RAA] account holders." *Id.* at 10-11 (internal footnote omitted; emphasis added).

- "There is nothing unusual about a plan discharging a welfare benefit obligation by providing benefits in the form of a promissory instrument similar to a [RAA.] In other contexts plans often discharge their obligations by issuing a contract to the beneficiary or by crediting amounts to an account controlled by the beneficiary in this matter." *Id.* at 11 (collecting examples).

- "Nothing in ERISA prohibits a welfare plan from defining the benefit as a contract or [RAA], rather than the payment of cash benefits." *Id.* at 12.

The Department of Labor further explained the critical difference between *Faber* and the

First Circuit's opinion in *Mogel v. Unum Life Ins. Co. of America*, 547 F.3d 23 (1st Cir. 2008),

turned *on the different plan language* at issue in both cases:

> Unlike the situation in this case [*Faber*], however, the particular plan before the First Circuit in *Mogel* expressly defined the plan's benefits in the form of a lump sum cash payments, which defendant Unum quite literally retained for itself. *Mogel*, 547 F.3d at 25; *see also id.* at 26 ("[t]he district court found, and we agree, that delivery of the checkbook did not constitute a 'lump sum payment' called for by the policies"). . . . Contrary to the plaintiffs' view, *Mogel* does not stand for a broader proposition that the insurance company can never "retain" plan assets and use them for its own benefit, regardless of whether the plan specifically provided for a lump sum cash distribution or simply for the creation of [an RAA]." *Such a broad reading ignores the plan's own definition of the benefit and ignores the many circumstances in which plans discharge their responsibilities through the delivery of a contract or insurance policy, rather than cash.*

3

*Id.* at 13 (internal citation omitted; emphasis added).

The fact specific and plan specific nature of the inquiry described by the Department of Labor in *Faber* bears directly on Plaintiff's pending Motion for Class Certification. More specifically, in opposing Plaintiff's Motion, Defendants explained that a fact specific inquiry into the plan language governing each putative class member's benefit would be required before adjudicating each putative class member's claims, thus precluding certification. (Opposition Brf. at 13-19). The Department of Labor's brief bears this out, and makes clear that whether a life insurance company satisfies or breaches its fiduciary duties by paying life insurance benefits via RAA depends on the specific terms of the plan at issue and a "factual inquiry into the parties' representations and understandings."

***[Remainder of Page Left Intentionally Blank]***

Accordingly, Defendants respectfully request that Plaintiff's motion for class certification be denied.

Respectfully submitted,

LIFE INS. CO. OF NORTH AMERICA and
CONNECTICUT GENERAL LIFE INSURANCE
By Their Attorneys,

Dated:  February 22, 2011

*/s/ Jeffrey W. Moss*
Jeffrey W. Moss, BBO# 552421
Morgan, Lewis & Bockius LLP
225 Franklin Street, 16th Floor
Boston, Massachusetts  02110
Telephone:  617.341.7700
Facsimile:  617.341.7701
Email:        jmoss@morganlewis.com

Jeremy P. Blumenfeld (*Pro Hac Vice*)
Victoria L. Gorokhovich (*Pro Hac Vice*)
Kasturi Sen (*Pro Hac Vice*)
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:  215.963.5000
Facsimile:  215.963.5001
Emails:        jblumenfeld@morganlewis.com
                   vgorokhovich@morganlewis.com
                   ksen@morganlewis.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served on the following counsel of record on February 22, 2011 *via* the Court's ECF system:

>Stuart T. Rossmann, Esquire
>Charles M. Delbaum, Esquire
>The National Consumer Law Center
>7 Winthrop Square, 4th Floor
>Boston, Massachusetts  02110
>srossman@nclc.org
>cdelbaum@nclc.org
>
>John C. Bell, Jr., Esquire
>Leroy W. Brigham, Esquire
>Bell & Brigham
>Post Office Box 1547
>Augusta, Georgia  30903-1547
>john@bellbrigham.com
>lee@bellbrigham.com
>
>Jeffrey G. Casurella, Esquire
>LAW OFFICES OF JEFFREY G. CASURELLA
>400 Interstate N. Pkwy. Suite 310
>Atlanta, GA 30339
>jeff@jgclawoffices.com
>
>Helen Cleveland, Esquire
>CLEVELAND GAMBLE GILBREATH LLC
>Resurgens Plaza, Suite 2270
>945 East Paces Ferry Road
>Atlanta, GA 30326
>hcleveland@cgglegal.com
>
>M. Scott Barrett, Esquire
>Barrett & Associates
>320 W. 8th St., Suite 100
>P.O. Box 5233
>Bloomington, Indiana  47407-5233
>MSB4664@aol.com

Joseph K. Markel, Esquire
Ronald K. Lambring, Esquire
Jennifer Markel, Esquire
Markel Markel & Lambring
136 South Main Street
P.O. Box 121
Brownstown, Indiana  47220
jlmarkel@markellaw.com

Cary L. Flitter, Esquire
Lundy Flitter & Beldecos, PC
450 North Narberth
Narberth, Pennsylvania  19072
cflitter@lfbb.com

_/s/ Jeffrey W. Moss_____
*Attorney for All Defendants*