UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-CV-11537-RGS

BRENDA J. OTTE,
Administratrix of the Estate of Gladys Reynolds

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA, CONNECTICUT
GENERAL LIFE INSURANCE COMPANY, and DOES 1 through 100, inclusive

MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

June 10, 2011

STEARNS, D.J.

Plaintiff Brenda J. Otte is the administratrix of the estate of Gladys Reynolds. On July 2, 2010, Otte filed a Rule 23 motion to certify a class of life insurance beneficiaries eligible for death benefits under employee benefit plans insured by CIGNA Corporation (CIGNA). Otte seeks monetary and other equitable relief from defendants Life Insurance Company of North America (LINA) (an underwriting subsidiary of CIGNA), Connecticut General Life Insurance Company (CGLIC) (also a CIGNA-affiliated company), and Does 1 through 100, inclusive.[1] Otte alleges that

_____

[1] Does 1 through 100 are indirect or direct subsidiaries of CIGNA. Otte is presently unaware of the true names or identities of the persons or entities named herein as Does 1-100, but states that she intends to amend the Complaint after ascertaining the Doe identities during discovery.

defendants have and continue to invest death benefits owing under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461, for CIGNA's private benefit without disclosing the practice or making a full accounting to the affected beneficiaries. The court held a hearing on November, 15, 2010, but deferred issuing a decision in deference to the parties' attempt (ultimately unsuccessful) to mediate the dispute.

## BACKGROUND

Jack Reynolds was a participant in a life insurance plan purchased by his former employer, Cummins, Inc. The plan was insured by a policy issued by LINA. After Reynolds died on December 10, 2006, his mother, Gladys Reynolds, submitted a claim for the $5,000 (plus interest) to which she was entitled under the policy. LINA paid the benefits by creating a CIGNAssurance account to which the full balance was credited. On May 22, 2007, Gladys Reynolds received a letter from "CIGNA Group Insurance" that informed her, "[w]e've deposited your insurance proceeds into a CIGNAssurance account in your name. The account is free and earns an attractive rate of interest comparable to a money market checking account." First Am. Comp. ¶ 21. The letter further informed Reynolds that in the next five to ten days, she would receive a welcome kit that would include, among other things:

*Your Certificate of Confirmation, which shows the claim payment

amount deposited into your account and the current interest rate being credited. Your balance and earned interest are fully guaranteed by the insurance company. Your CIGNAssurance account is not a bank deposit and is not insured by the Federal Deposit Insurance Corporation or any federal agency.

*A supply of personalized drafts to give you access to your money, immediately. You may write an unlimited number of drafts, in any amount, at any time.

*Id.* Defendants point out that when a beneficiary makes a claim for benefits, the claim is governed by the terms of the applicable plan. The plan document that governs the claim is generally a summary plan description (SPD), which is individually negotiated and written by and/or approved by each individual employer or union. During the proposed class period, LINA issued thousands of group life insurance policies guaranteeing benefits provided by ERISA-governed plans. It follows that several thousand different SPDs apply to the claims of the putative class members.[2]

Defendants deem a beneficiary to have been paid in full once an account is created in the beneficiary's name and entered as a liability on the books of CGLIC. Beneficiaries are provided with personalized drafts (checks) payable through State

_____

[2] The parties disagree over whether beneficiaries have the ability to opt out of the CIGNAssurance program. Otte claims that the account was mandatory for claims of $5,000 or more. Defendants claim that opt-outs were in fact allowed and that individuals had the right to request payment of the benefits in full by check either before or after the creation of the CIGNAssurance account.

Street Bank to be used to withdraw funds from the account.[3] LINA alleges that Gladys Reynolds had access to all or part of her funds at any time through her book of drafts.

As of May of 2010, the value of the Reynolds CIGNAssurance account amounted to $5,075.21, which represented the death benefits with interest accrued at rates ranging from .39% to .74%. On July 24, 2009, Thelma Otte, Gladys Reynolds' daughter, resigned as administratrix in favor of Brenda Otte, Gladys Reynolds' granddaughter, because she did not wish to pursue this litigation. Brenda Otte attempted to withdraw most of the funds using one of the provided CIGNAssurance drafts, but payment was refused.[4]

On September 15, 2009, Otte filed this class action Complaint alleging violations of ERISA §§ 404(a), 406(a)(1)(D), and 406(b)(1). *See* 29 U.S.C. §§ 1104 and 1106.[5]

---

[3] Defendants further explain that Open Solutions (OSI) handles all of the account-level administration for CGLIC and acts as a "hub of communication" between CGLIC, account holders, and State Street Bank.

[4] Defendants state that the check bounced because it had not been cashed or deposited within the 180-day period noted on the face of the draft.

[5] Defendants argue that no section 406(a)(1)(D) violations were alleged in the Amended Complaint; therefore, this claim is not properly before the court as a claim subject to class certification. The Amended Complaint adverts to the section 406 prohibition against self-dealing by plan fiduciaries. Although the Amended Complaint does not reference section 406(a)(1)(D) specifically, the court deems the general reference to section 406 sufficient to satisfy Fed. R. Civ. P. 8's notice pleading requirements.

Specifically, Otte asserts that the "[d]efendants' practice of retaining, commingling, using and investing benefits for [d]efendants' own account violates ERISA §404(a) (29 U.S.C. § 1104(a)), which requires plan fiduciaries to discharge their duties with respect to ERISA plans 'solely in the interests of the participants and beneficiaries' and 'for the exclusive purpose of providing benefits to participants and their beneficiaries.' ERISA §404(a)(1)(A)(i)." Pl.'s Mem. at 3. Furthermore, Otte asserts that "[d]efendants' actions violate ERISA § 406(b)(1) (29 U.S.C. § 1106(b)(1)), which prohibits plan fiduciaries from dealing in plan assets in their own interest for their own account." *Id.*

Otte seeks to certify all persons who, from September 15, 2003 through the present, are beneficiaries under ERISA-governed employee welfare benefit plans that were insured by group life insurance policies issued by LINA (or any other underwriting subsidiary of CIGNA) and for which CIGNA issued death benefits through a CIGNAssurance "retained asset account" (RAA).[6] The proposed class consists of approximately 90,000 to as many as 130,000 beneficiaries.[7] On behalf of

---

[6] Excluded from the proposed class are CIGNA, its directors, officers, employees, parents, affiliates/subsidiaries, and their successors, agents, legal representatives, heirs and assigns, and any persons controlled by any excluded person.

[7] Defendants contend that Otte's claims rest entirely on the presumedly erroneous premise that the funds in the CIGNAssurance accounts are "plan assets." If the motion to dismiss fails, defendants state their intention to prove that the funds do

herself and the putative class, Otte seeks equitable relief to redress the alleged violations, including an order requiring defendants to account for and disgorge any profits they earned through the RAAs.

## DISCUSSION

Otte moves for class certification under Rule 23 of the Federal Rules of Civil Procedure. To satisfy Rule 23, Otte must establish the four elements of Rule 23's subpart (a) and one of the three elements of subpart (b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-614 (1997). Otte submits that she satisfies the four elements of Rule 23(a) and at least one of the elements of Rule 23(b). Defendants oppose the motion for class certification, arguing that Otte has not established typicality or adequacy under Rule 23(a), nor any of the elements of Rule 23(b).

### *Rule 23(a)*

The Rule 23(a) elements are (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Id*. at 613. Although at least one common issue of fact or law at the core of the action must shape the class, Rule 23(a) does not require that every class member share every factual and legal predicate of the action. *In re Lupron Mktg. & Sales Practice Litig*., 228 F.R.D. 75, 88 (D. Mass. 2005), citing *In re General Motors Trucks*, 55 F.3d 768, 817 (3d Cir. 1995).

---

not and cannot constitute assets belonging to any plan.

### *Rule 23(a)(1): Numerosity*

To satisfy the numerosity requirement, the class must be sufficiently large that joinder is impracticable. Fed. R. Civ. P. 23(a)(1). The parties do not dispute that the numerosity requirement is met given the unwieldy size of the proposed class.

### *Rule 23(a)(2): Commonality*

To satisfy the commonality requirement, there must exist common questions of law or fact. Fed. R. Civ. P. 23(a)(2). "The threshold of 'commonality,' is not high. Aimed in part at 'determining whether there is a need for combined treatment and a benefit to be derived therefrom,' the rule requires only that resolution of the common questions affect all or a substantial number of the class members." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986) (citations omitted). For that reason, the commonality requirement has been characterized as a "low hurdle." *S. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 87 (D. Mass. 2007).

Otte submits that as a factual matter, defendants followed common practices in handling the payout of death benefits claims that impacted each member of the putative class, namely: (1) generating time-of-payment clauses using a limited number of "text blocks," none of which disclosed the use of a CIGNAssurance account; (2) using the same claims processing procedures for all death benefits beneficiaries; (3)

automatically establishing CIGNAssurance accounts for the distribution of death benefits of $5,000 or more; (4) causing the payment of death benefits to CGLIC, where the funds were retained and used until the beneficiary's drafts were drawn on the CIGNAssurance accounts; (5) using the same outside vendor, OSI, to create and provide services to the CIGNAssurance accounts; (6) using the same financial institution (State Street Bank) to process drafts drawn on CIGNAssurance accounts; (7) setting a single uniform interest rate for all CIGNAssurance accounts; and (8) transferring money to cover drafts on all CIGNAssurance accounts from CGLIC corporate accounts.

Otte further maintains that the putative class shares the following common questions of law: (1) whether death benefits that were credited to CIGNAssurance accounts but not actually paid to beneficiaries constitute ERISA plan assets; (2) whether defendants are fiduciaries with regard to the unpaid death benefits; (3) whether defendants' retention and investment of the beneficiaries' funds violates ERISA §§ 404(a), 406(a)(1)(D), and 406(b)(1); and (4) the measure of the amount by which defendants were unjustly enriched by investing ERISA plan assets for their own financial gain. The parties do not dispute that the commonality requirement of Rule 23(a) is satisfied.

### *Rule 23(a)(3): Typicality*

"The representative plaintiff satisfies the typicality requirement when its injuries arise from the same events or course of conduct as do the injuries of the class and when plaintiff's claims and those of the class are based on the same legal theory." *In re Credit Suisse-AOL Sec. Litig.,* 253 F.R.D. 17, 23 (D. Mass. 2008). The purpose of the typicality requirement is to "align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 311 (3d Cir. 1998). The representative plaintiff's claims need not be completely identical to those of absent class members. *In re Credit Suisse*, 253 F.R.D. at 23. "The test for typicality, like commonality, is not demanding." *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993).

Otte asserts that her claims are, for all practical purposes, identical to those of the putative class members and arise out of the same course of conduct by defendants. They disagree. First, defendants contend that Otte has not limited her proposed class definition to individuals who were paid life insurance benefits pursuant to her "brand" of employee benefit plan; rather, she seeks to represent individuals who were eligible for benefits under 5,000 different policies, governed by an equivalent number of proprietary SPDs. Because ERISA requires each covered plan to be "'established and maintained pursuant to a written instrument,' 29 U.S.C. § 1104(a)(1), 'specif[ying] the

basis on which payments are made to and from the plan,' § 1104(b)(4)[,]"[8] the scope

of each defendant's duties is defined at least in part by the terms of the individual plan

documents, including the SPD. Defendants contend that significant variances among

the SPDs (as well as the laws and regulations that govern them) preclude a finding of

typicality for the overwhelming number of class members whose plans were governed

by SPDs that differed materially from that of the Reynolds' policy.

Otte counters that her claims do not depend on the language of the plans, the

SPDs, the claim forms, state laws and regulatory policies, or beneficiaries' payment

elections. Rather, the practice that she complains of is defendants' "retention and use

for its own profit of benefits owed under ERISA-governed life insurance policies."

Pl.'s Reply Mem. at 1. With respect to defendants' duty to treat these benefits as plan

assets, Otte notes that in a case involving a markedly similar RAA, the First Circuit

held that "until the check to the beneficiary is actually presented to the plan for

payment through the banking system, and paid, the money due to the beneficiary is an

asset of the plan." *Mogel v. UNUM Life Ins. Co. of Am.*, 547 F.3d 23, 26 (1st Cir.

2008), quoting *Commonwealth Edison Co. v. Vega*, 174 F.3d 870, 873 (7th Cir. 1999).

The First Circuit gave significant weight to the fact that the "funds represented by that

---

[8] *Kennedy v. Plan Adm'r for Dupont Sav. & Inv. Plan*, 129 S. Ct. 865, 875
(2009).

check are retained by [defendants] and [defendants] had use of the funds for [their] own benefit." *Mogel*, 547 F.3d at 26. Defendants, for their part, cite a district court case from the Southern District of New York, *Faber v. Metro. Life Ins. Co.*,[9] distinguishing *Mogel* on grounds that "[t]he plan at issue . . . expressly required [the defendant] to pay the beneficiaries via lump sum payment when their benefits vested." *Faber*, 2009 WL 3415369, at *8. Relying on this distinction, the court in *Faber* ruled that the plaintiffs had "received all the benefits to which they were entitled and have no reasonable expectation of any additional benefits under the Plans." *Id.* at *6.

Putting aside the relative weight of the two precedents, I am persuaded by the First Circuit's reasoning in *Mogel* that the checkbook at issue was "no more than an IOU which did not transfer the funds to which the beneficiaries were entitled out of the plan assets[;] hence [the defendant] remained a fiduciary with respect to those funds." *Mogel*, 547 F.3d at 27. As Otte observes, other district courts, including two judges from this district, have followed *Mogel* without relying on the specific terms of any plans or SPDs in holding that the establishment of an RAA does not discharge a defendant of its fiduciary obligations.[10] *See Vander Luitgaren v. Sun Life Ins. Co. of*

---

[9] 2009 WL 3415369 (S.D.N.Y. Oct. 23, 2009).

[10] Two of these cases involve breach of fiduciary claims brought under ERISA, while the other two cases involve analogous breaches of non-ERISA fiduciary claims. Defendants' attempts to distinguish the latter elevate category over substance.

*Canada*, 2010 WL 4722269, at *1 (D. Mass. Nov. 18, 2010) (Gertner, J.) ("[F]iduciary duties under ERISA are active until the money is fully withdrawn from the individual retained asset accounts."); *Edmondson v. Lincoln Natl'l Life Ins. Co.*, 2011 WL 1234889, at *15 (E.D. Pa. Apr. 1, 2011) (Baylson, J.) ("Judge Gertner's conclusion that an insurer's fiduciary duty extends until the point when the insurer no longer exercises authority or control over the assets aptly reflects the protective purposes of ERISA."). *See also Lucey v. Prudential Ins. Co. of Am.*, 2011 WL 1740311, at *3 (D. Mass. May 5, 2011) (Ponsor, J.) (refusing to ignore the "clear and pointed direction" from the First Circuit in *Mogel* in finding that "[a] lump-sum payment by check (which actually transfers the funds to the beneficiary) is simply not the same as a lump-sum payment by checkbook (which allows the insurance company to retain the funds and earn interest on them)"); *Keife v. Metro. Life Ins. Co.*, 2011 WL 1599600, at *4 (D. Nev. Apr. 27, 2011) (Hicks, J.) (denying defendant's motion to dismiss a non-ERISA breach of fiduciary duty claim under *Mogel* because defendant "didn't make an immediate payment of the benefits because [it] maintained possession and control of the funds while they were in the [RAA]").

Defendants next challenge a finding of typicality with respect to putative class members' claims that arose prior to September 15, 2006, because of the potential applicability of a three-year statute of limitations. What defendants have in mind are

the claims of individual class members that are subject to an actual knowledge statute of limitations defense under section 413 of ERISA . Under this section, no action may be commenced six years after the date of the last action constituting the breach (or the latest date on which the fiduciary could have cured the breach), or three years after the earliest date on which a plaintiff had actual knowledge of the breach. 29 U.S.C. § 1113.

Actual knowledge requires that a plaintiff know "the essential facts of the transaction or conduct constituting the violation." *Edes v. Verizon Commc'n, Inc.*, 417 F.3d 133, 142 (1st Cir. 2005). Defendants claim that given the disclosures that an RAA is not a bank account, that it is not FDIC insured, and that it earns interest comparable to a money market checking account, it would be only the most insensate of beneficiaries who could plausibly claim not to have understood the essential features of his or her CIGNAssurance account.[11] Defendants contend that Otte's claims, in this regard, are not typical because she has no incentive to litigate issues relevant to the statute of limitations defense (her claims concededly arose well within the three-year limitations period). *See Van West v. Midland Nat'l Life Ins. Co*, 199 F.R.D. 448, 453 (D.R.I. 2001) (plaintiff might "prevail by showing that a particular agent made false

_____

[11] As a purported deal-clincher, defendants note that each beneficiary received a welcome kit from CIGNAssurance containing a book of drafts rather than a check in the amount of the death benefit owed.

representations to him, in which case he would have no need or incentive to present the additional facts necessary to prove that other agents made misrepresentations to other class members.").

Defendants make a serious point in this regard, although it has less to do with Otte's ability to function as a faithful steward of the interests of the entire class than with the manageability of claims of class members that are subject to individualized affirmative defenses. This issue, however, can be addressed by certifying two sub-classes, one consisting of persons whose claims arose within the three years before the filing of the Complaint, the other of persons whose claims arose three years prior to that date. A brief period of discovery should establish whether the second sub-class can survive the commonality test and whether a suitable representative of the sub-class can be identified.

Finally, defendants argue that Otte cannot represent any class member who signed a claim form because she does not possess a form signed by Gladys Reynolds for her son's death benefits. The defendants assert that beneficiaries who did sign a claim form "entered into a new, mutually consented, contractual relationship regarding the CIGNAssurance [a]ccount that was completely independent of [d]efendants' obligations to beneficiaries under ERISA." Defs.' Opp'n at 24-25. Defendants

contend that Otte has no incentive to vigorously pursue claims for these latter beneficiaries.

Defendants' argument in this regard is not faithful to the First Circuit's *Mogel* decision, which rebuffed a similar attempt to evade ERISA-imposed fiduciary duties by referring to exculpatory language in SPDs, or pointing to claim forms with check boxes requiring affirmative selection of a CIGNAssurance account as the means of receiving death benefits. *Mogel*, 547 F.3d at 26 ("[Defendant's] theory that its mailing of the checkbooks to the beneficiaries and their acceptance formed a unilateral contract is unpersuasive, for until the beneficiaries received the lump sum payments to which they were entitled, [the defendant] remained obligated to carry out its fiduciary duty under the plan.").

### Rule 23(a)(4): Adequacy

The final issue under Rule 23(a) is Otte's ability to fairly and adequately protect the interests of the class as a whole. Although some courts of appeals have set a high bar for adequacy by requiring that class representatives be active, well-informed, and able to direct the litigation, the First Circuit has not adopted so strict a standard. "The controlling test still requires only that '[t]he moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified,

experienced and able to vigorously conduct the proposed litigation.'" *In re Organogenesis Sec. Litig.*, 241 F.R.D. 397, 406 (D. Mass. 2007), quoting *Andrews v. Bechtel Power Co.*, 780 F.2d 124, 130 (1st Cir. 1985).

With respect to Otte's knowledge of the case, all that is required of her is a general knowledge of the contours of the litigation and personal participation in discovery events. *In re Carbon Black Antitrust Litig.*, 2005 WL 102966, at *14 (D. Mass. Jan. 18, 2005). A plaintiff is "not required to have expert knowledge of all the details of a case." *Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*, 247 F.R.D. 253, 265 (D. Mass. 2008). Although Otte's grasp of the legal claims may be rudimentary, she was voluntarily deposed, knows who the parties are and the role of her attorneys, understands the nature of a class action suit, and is aware of the basic facts that led to the creation of Mrs. Reynolds' CIGNAssurance account as well as the allegation that defendants diverted to themselves interest that should have been paid to Mrs. Reynolds. The court is satisfied that Otte is qualified to act as a class representative.[12]

*Rule 23(b)(3)*

---

[12] With respect to defendants' professed concern over the potential conflict of interest in Otte's serving in the dual functions of administratrix and class representative, the court is satisfied with her declaration that all of the estate's beneficiaries have given their written consent to her dual role.

Rule 23(b)(3) requires, in pertinent part, that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The predominance inquiry does not require a plaintiff to "show that the legal and factual issues raised by the claims of each class member are identical." *In re Napster, Inc. Copyright Litig.*, 2005 WL 1287611, at *7 (N.D. Cal. Jun. 1, 2005). Instead, the focus should be on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. A district court "must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000). There is "some overlap among the certification criteria of commonality, . . . typicality, . . . and predominance." *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 522 F.3d 6, 19 (1st Cir. 2008).

Taking commonality and typicality as a starting point, the court notes that Otte and the putative class members are all beneficiaries of ERISA-governed plans insured and administered by defendants, and that defendants' policies and practices governing the distribution of death benefits to the proposed class are largely identical. Otte argues that these policies and practices violate both ERISA §§ 404 and 406, and that the

remedies for these violations are the same for Otte and the other putative class members.

With respect to individualized damages determinations, Otte maintains that these will be limited to a formulaic calculation of the share to be allocated to each class member from the proposed constructive trust. Otte alleges that this number can be extracted with relative ease from defendants' records, a fact that supports certification under Rule 23(b)(3). *See Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 40 (1st Cir. 2003) (common issues predominate where individual factual determinations can be accomplished using computer records, clerical assistance, and objective-criteria). Where, as here, common questions predominate regarding liability, the fact that damages must be calculated on an individual basis does not defeat the predominance requirement.

As previously noted, defendants raise serious concerns regarding Otte's ability to satisfy the predominance requirement, alleging that individualized inquiries may be necessary with respect to the statute of limitations defense raised in their challenge to typicality. According to defendants, these individualized inquiries threaten predominance, especially where, as here, actual knowledge (rather than constructive knowledge) on the part of each affected class member must be established and cannot

be imputed.  *See, e.g., Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 325-327 (4th Cir. 2006).

"Courts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members."  *Smilow*, 323 F.3d at 39.  Indeed, the First Circuit has counseled that if "evidence later shows that an affirmative defense is likely to bar claims against at least some class members, then a court has available adequate procedural mechanisms," such as placing class members whose claims may be barred in a separate sub-class, or excluding them from the class altogether.  *Id.*, citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001) (describing procedural options and collecting authorities).  As earlier indicated, this seems the wisest course to follow here – if discovery bears out defendants' contentions, a sub-class of persons for whom proof of actual knowledge is an issue can easily be segregated from those whose claims incontestably fall within the three-year limitations period.[13]

The superiority inquiry contemplates: (1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in the forum; and (4) manageability.  Fed. R. Civ. P.

---

[13] The court recognizes that the claims of the sub-class may be so individualized as to be unmanageable as a class action.

23(b)(3)(A)-(D).  In evaluating these factors, the First Circuit weighs judicial economy and efficiency, the likelihood of individual litigation given the anticipated amount of recovery per plaintiff, the cumulative extent of the wrongdoing that would go unpunished if certification is denied, and the general feasibility and likelihood of individual litigation.  "It is enough for the superiority determination here that . . . class status here is not only the superior means, but probably the only feasible one . . ., to establish liability and perhaps damages."  *Tardiff v. Knox Cnty.*, 365 F.3d 1, 7 (1st Cir. 2004).

Otte illustrates by way of example that the likely recovery by each plaintiff would give little if any incentive for the bringing of individual suits.  On the other hand, the aggregate enrichment (if found unjust) by defendants may add up in the millions of dollars.  With respect to judicial economy, the size of the proposed class makes clear that "piecemeal adjudication of claims covering substantially similar issues would be an inefficient allocation of court resources."  *In re Boston Scientific Corp. Sec. Litig.*, 604 F. Supp. 2d 275, 287 (D. Mass. 2009).  *See also Amchem*, 521 U.S. at 625.

Defendants for their part claim that Otte's proposed class is "unnecessarily enormous and unwieldy" because "[e]ach plan that provided life insurance to employees of the plan sponsor has individualized interests at stake with regard to the claims of its beneficiaries in this suit."  Defs.' Opp'n at 44.  Instead, defendants suggest

that plan-by-plan certification would be economically feasible while giving sufficient protection to the rights of individual beneficiaries. They also suggest that the resulting cases be amalgamated for discovery purposes. In light of defendants' representation that Otte seeks to represent beneficiaries paid death benefits pursuant to over 5,000 different policies, the court is unconvinced that any significant economies of scale would be realized under defendants' approach.

## ORDER

For the foregoing reasons, plaintiffs' motion for class certification will be ALLOWED in part. The court will provisionally certify two sub-classes, the first consisting of all beneficiaries whose claims accrued during the three years prior to the filing of the Complaint with Otte as their representative; the second consisting of all beneficiaries whose claims accrued during the three years prior to the inception of the primary class. The parties will within fourteen (14) days file a proposed scheduling order that will permit the taking of sufficient discovery to permit the court to determine whether the second sub-class is maintainable as a class action or fails for lack of predominance or want of an adequate sub-class representative.

SO ORDERED.

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE